644 P.2d 881

**STATE of Arizona, Appellee,**

v.

**James Edward PIATT, Appellant.**

No. 4943.

Supreme Court of Arizona,
In Banc.

Dec. 29, 1981.

Rehearing Denied May 4, 1982.

**146**

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Charles L. Weninger, Tucson, for appellant.

James Edward Piatt, in pro per.

CAMERON, Justice.

On 30 January 1980, James Edward Piatt was found guilty of first degree murder in violation of former A.R.S. §§ 13–451 and 13–452. The State did not seek the death penalty and defendant was sentenced to life imprisonment without possibility of parole for 25 years, pursuant to former A.R.S. § 13–453(A). From this judgment, defendant appeals. In addition to the brief of counsel, this court permitted defendant to file a supplemental brief in propria persona. We have jurisdiction pursuant to A.R.S. § 13–4031.

The following questions were raised on appeal by defendant's counsel:

1. Was the defendant's confession voluntary?

2. Was the State's key witness competent to testify despite the fact that she had been taking narcotics at the time of the homicide?

3. Was it error for the trial court to deny defendant's motion that would have required the State's key witness to undergo psychiatric examination by defendant's expert?

In addition, the defendant raised the following issues in his supplemental brief:

4. Was the defendant denied his right to speedy trial?

5. Was there sufficient evidence to support the verdict?

6. Did defense attorney's acts or omissions deny the defendant his right to effective assistance of counsel?

The facts necessary for a determination of these issues are as follows. Thomas Schmidt, the victim, and the defendant were business associates in the illegal trafficking of narcotics, including marijuana, LSD, and amphetamines. Robin Cyphers was Schmidt's 15-year-old girl friend. At the time of the murder, Cyphers and Schmidt had been living together for several weeks. On the evening of 23 February 1978, Cyphers and Schmidt went to an apartment occupied by the defendant. Despite the fact that both Schmidt and Cyphers had been taking LSD at the time, Cyphers testified that she had a clear recollection of the events of the evening. After some conversation, Schmidt told the defendant that he and Cyphers had to leave and asked the defendant to "give him the money." Defendant went into a back room, returned, and without any warning, shot the victim five times. On 19 March 1978, the body of Thomas Schmidt was discovered in the trunk of a car in Tucson, Arizona. Although the corpse was in an advanced state of decomposition, a pathology examination revealed that the victim had died of multiple gunshot wounds to the abdomen, neck and head.

Cyphers later testified that because of her fear of the defendant, she accompanied him to Texas where they lived together intermittently until they were arrested for possession of narcotics. Defendant was injured in one eye during the arrest, he claims by a gun barrel. He did not ask for medical treatment for the injury. At the time of the arrest, two Tucson detectives who had traveled to Texas interviewed the defendant. The defendant denied his complicity in the murder and refused to waive his right to counsel. The Tucson detectives then returned to Arizona. Meanwhile, on advice from her attorney, Cyphers contacted Arizona authorities and recounted her story of the shooting. As a result, the charges in Texas were dropped and she was offered immunity in Arizona. Subsequently, at defendant's request, a telephone call to Texas from Tucson elicited a taped confession from the defendant that he had committed the murder. According to defendant's statement, the motives for the murder were that the victim was somehow cutting into defendant's drug business, and that defendant was upset to hear that the victim had planned to exploit Robin Cyphers in prostitution and to addict her to heroin. After he arrived in Tucson from Texas, defendant refused to talk further with the Tucson officers and insisted upon his right to counsel. From a jury verdict of guilty to first degree murder, defendant appeals.

## VOLUNTARINESS OF CONFESSION

The defendant first contends that his taped telephonic confession was involuntary and therefore inadmissible, in that it was obtained in return for a promise of better quarters and that it was the result of coercion by one of the Texas deputies.

On 23 January 1980, a suppression hearing was held to determine the voluntariness of the confession. Prior to the hearing on the motion to suppress, the State proposed to hear the Arizona officers and then continue the motion to suppress to the time of the trial at which time members of the sheriff's department in Austin, Texas, would be available. Defendant objected because he would be forced to trial without knowing whether the confession was suppressed or admitted. The trial court agreed and denied the motion.

At the hearing to suppress, the trial court heard the tape of defendant's confession and a transcript of the taped conversation was available. The defendant also testified. Counsel stipulated that the defendant was informed of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), including the right to remain silent and to have an attorney present during questioning. There is no question that the defendant reinstituted this conversation by asking that the Tucson detectives call him. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

"BUNTING: OK, now having been advised of those rights and understanding those rights, will you answer my questions?

"PIATT: Yes.

"BUNTING: OK. Would you state your name for me, please?

"PIATT: JAMES EDWARD PIATT.

"BUNTING: OK, and what's your date of birth, JIM?

"PIATT: March 9th, 1954.

"BUNTING: OK. I don't know, you know, what it is you want to talk to me about. That's all I was told. The reason I'm calling you is that if depending on what it is, you know, we might fly out there to, you know talk to you further but we wanted to get some sort of an indication prior to the time we did that. You want to tell me what it is you want to talk about?

"PIATT: Uhh, I don't know, I guess it's be called your confession or whatever you wanted to hear.

"BUNTING: OK, well, it's you know, I ... what we're looking for is the truth, if ... you want to give me the basics of ... of what you want to say.

"PIATT: Uhh ... well, I did it and I had reasons which I don't want to get into over the phone.

"BUNTING: OK, I understand that."

Later defendant was asked:

"BUNTING: Have you spoke to your attorney?

"PIATT: Uh, yes I have but not concerning this.

"BUNTING: OK. Did you ... when I talked to you the last two times you told me that you wanted to talk to your attorney. Did you just change your mind? Remember when I was there . . .

"PIATT: I don't trust attorneys.

"BUNTING: OK, well then it ... it's your choice that you didn't want to talk to him, right?

"PIATT: Yes.

"BUNTING: And has anybody coerced you or ... or forced you into changing your mind?

"PIATT: No, sir.

"BUNTING: OK. Are you willing to waive extradition?

"PIATT: Yes. I've been trying since Wednesday to get word to you."

The defendant testified that he had given the confession in return for being placed in a general cell with others where he could play chess and cards, rather than solitary confinement. The trial judge stated that even if it were shown that "while the defendant was held in Texas he was placed in a small one man cell, he had not talked to any attorney, *and he was promised that he would be placed back in the general population if he made a statement,*" it would make no difference in the court's ruling. As to the alleged coercion by the Texas authorities, defendant testified:

"Q When did you see Officer Walsh?

"A Well, they took me back upstairs on the 29th, and about a half an hour later they brought me down. And there was Jim Walsh again. And he said this is what's going on. He says you are going to confess to this and get extradited, or you are going to have a successful suicide. We want you out of Texas."

Based upon the stipulation that defendant had received his *Miranda* rights prior to the confession, the confession itself, and the testimony of the defendant, the court ruled:

"I have considered the stipulation that was entered into a few minutes ago by the attorneys and I have considered the testimony of Mr. Piatt and I have also considered contents of the statements of December the 1st that were referred to by the county attorney, particularly the certain questions and answers on page five, and on page 13. And at this time I find that the statement was voluntarily made. And that at that time the defendant knew of his constitutional rights, and he voluntarily waived the constitutional rights. Therefore, the motion to suppress is denied."

█ All confessions are prima facie involuntary and the burden is on the State to show that a confession was freely and voluntarily made and not the result of promise or inducement. *State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978); *State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366 (1979). To sustain its position, the State must prove the voluntariness of the confession by a preponderance of the evidence. *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977); *State v. Arredondo*, 111 Ariz. 141, 526 P.2d 163 (1974). In determining whether it is admissible, the trial court must look to the totality of the circumstances surrounding the giving of the confession. *State v. Arnett*, supra; *State v. Knapp*, supra; see also A.R.S. § 13–3988.

In the instant case, we believe that the State made a prima facie case of voluntariness and it was up to the defendant to go forward with the evidence to overcome the State's prima facie case. Unfortunately, the defendant was not allowed to rebut the State's case because his request that the Texas jailer be brought to testify was denied.

We have said that a confession, to be voluntary, cannot have been obtained by "any direct or implied promises, *however slight,*" *State v. McFall*, 103 Ariz. 234, 236, 439 P.2d 805, 807 (1968), quoting *Malloy v.*

*Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653, 659 (1964), and under certain circumstances, depending upon the psychological makeup of the defendant and the physical condition of the isolated cell itself, the promise of a change of cell might be a real inducement for a confession. Of course, the alleged intimidation by the Texas deputies, if true, would have been a serious violation of defendant's rights and would have made the telephonic confession involuntary and inadmissible.

We believe the defendant should have had the opportunity to obtain these witnesses in support of testimony at the motion to suppress. It is not an unreasonable burden on the State, when a confession is taken over the telephone from a defendant in custody in a foreign jurisdiction, to be required to produce those officers from the foreign jurisdiction for cross-examination when there is a colorable claim of coercion by the defendant. It is not a question of failure of the evidence on the part of the State, but a denial of the right of the defendant to refute such evidence, and under the facts of this case, it was error not to allow the defendant's request that the Texas officers be brought to Arizona to testify. See *People v. Wagoner,* 8 Ill.2d 188, 133 N.E.2d 24 (1956).

The matter will have to be remanded to the trial court for a rehearing on the voluntariness of the confession.

## COMPETENCY OF WITNESS TO TESTIFY

Uncontroverted at trial was the testimony of the State's key witness, Robin Cyphers, that she was under the influence of "four hits" of LSD at the time that she witnessed the murder of Thomas Schmidt. The defendant contends that evidence presented at trial from an expert witness reveals that anyone under the influence of LSD in the proportions admitted to by Robin Cyphers, should have been barred from the witness stand and have been declared incompetent to testify as a matter of law.

The Arizona Rules of Evidence, 17A A.R.S., regarding witnesses, start with the proposition that "[e]very person is competent to be a witness except as otherwise provided in these rules or by statute." Rule 601, Arizona Rules of Evidence, 17A A.R.S. The Advisory Committee's Note attending Rule 601 of the Federal Rules of Evidence, which Arizona adopted with little variation, states that:

> "Discretion is regularly exercised in favor of allowing the testimony. A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence."

With the possible exception of children under ten years of age, A.R.S. § 12–2202(2), Arizona law provides no statutory prohibition to testifying on the grounds that a potential witness suffered a defect in perception regarding the events sought to be reconstructed. Even the exception for infancy, however, has been interpreted to allow discretion to the trial court in deciding whether to allow the testimony of a child of tender years. *State v. Bowie,* 119 Ariz. 336, 580 P.2d 1190 (1978); *State v. Harris,* 107 Ariz. 41, 481 P.2d 504 (1971); *Litzkuhn v. Clark,* 85 Ariz. 355, 339 P.2d 389 (1959). Also, we have previously refused to overrule trial courts' decisions to allow testimony despite evidence that a witness was known to be a user of narcotics. *State v. Ballesteros,* 100 Ariz. 262, 413 P.2d 739 (1966); *State v. Arriola,* 99 Ariz. 332, 409 P.2d 37 (1965). In the instant case, the witness Cyphers was effectively cross-examined on her use of LSD and its potential effect on her ability to perceive and recollect the incidents that culminated in the murder of Thomas Schmidt. A defense expert testified to the likely sensory distortions that accompany the use of LSD and the jury was properly instructed in its privilege to accept or reject any part of the proffered testimony. We find no error.

## PSYCHOLOGICAL EXAMINATION OF STATE'S WITNESS

Related to the issue of Robin Cyphers' competency to testify is defendant's argu-

ment that it was error for the trial court to deny a motion that would have required Cyphers to be examined by defendant's psychiatrist. The defendant's position is that by failing to order the examination, the trial court denied the defendant his fundamental right to confront the witness against him as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

The United States Supreme Court, however, has never instructed the states that the right of confrontation requires a witness to submit to any type of mental or physical examination, and we have held that whether a witness should be required to undergo a mental examination is usually a matter for the sound discretion of the trial judge and his decision will not be upset absent clear and manifest error. *State v. Wahrlich*, 105 Ariz. 102, 459 P.2d 727 (1969); see also *State v. Morrow*, 111 Ariz. 268, 528 P.2d 612 (1974).

■ In the instant case, there is doubt whether an examination by the defendant's psychiatrist would have helped the jury to better evaluate the credibility and veracity of Cyphers' testimony. The defendant's psychiatrist testified that an examination would not have enabled him to make any better opinions regarding the veracity of Cyphers' testimony. The psychiatrist stated that it is "impossible to know whether she was having a fantasy experience or a real experience." We find no abuse of discretion by the trial court.

## SPEEDY TRIAL

Because the defendant, in propria persona, does not state the legal basis for his speedy trial claim, we will presume that his argument is based on Rule 8, Arizona Rules of Criminal Procedure, 17 A.R.S., and the Sixth and Fourteenth Amendments to the United States Constitution. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

By virtue of the numerous motions filed on behalf of the defendant and because of the successive withdrawal of two appointed attorneys, thirteen months elapsed between the arrest and the trial. The defendant asserts that the time for his case to come to trial was excessive and that he was denied his right to speedy trial and was prejudiced thereby. Presumably, the defendant's claim is based on Rule 8.2(a), Arizona Rules of Criminal Procedure, 17 A.R.S., which requires that an accused be tried "within 150 days of the arrest or service of summons." Rule 8.4(a), however, provides that:

"The following periods shall be excluded from the computation of the time limits set forth in Rules 8.2 and 8.3:

a. Delays occasioned by or on behalf of the defendant, including, but not limited to, delays caused by an examination and hearing to determine competency, the defendant's absence or incompetence, or his inability to be arrested or taken into custody in Arizona."

■ In the instant case, the delay complained of by defendant was occasioned by the actions of the defendant. The defendant may not now complain of failure to follow the rule as grounds for a new trial. *State v. Gretzler*, 126 Ariz. 60, 612 P.2d 1023 (1980). Although the defendant made a claim of his right to speedy trial two months after his arraignment, the record here "strongly suggests that while he hoped to take advantage of the delay * * * and thereby obtain dismissal of the charges, [the defendant] definitely did not want to be tried." *Barker v. Wingo*, 407 U.S. 514, 535, 92 S.Ct. 2182, 2194, 33 L.Ed.2d 101, 119 (1972). Neither do we find that the defendant was prejudiced because of the length of time between arrest and trial. *Barker v. Wingo*, supra. We find no error.

## SUFFICIENCY OF THE EVIDENCE

■ The defendant points to several questions of fact regarding alleged inconsistencies in the State's evidence which he claims do not support his guilt beyond a reasonable doubt and instead point to innocence. We have often stated that the jury has the discretion to determine the credibili-

ty of witnesses and to evaluate the weight and sufficiency of the evidence presented. *State v. Parker,* 113 Ariz. 560, 558 P.2d 905 (1976); *State v. Pieck,* 111 Ariz. 318, 529 P.2d 217 (1974). In considering whether a verdict is contrary to the weight of the evidence, an appellate court does not decide whether it would reach the same conclusion, but rather whether there was competent evidence to support the conclusion of the jury. *State v. Toney,* 113 Ariz. 404, 555 P.2d 650 (1976). An appellate court will then consider the evidence in the light most favorable to sustaining the jury's verdict. *State v. Duncan,* 105 Ariz. 426, 466 P.2d 380 (1970).

The defendant directs us to the five instances where the State failed to prove: (1) why the eyewitness testimony about the physical positions of the defendant and the victim at the time of the murder fail to correspond with the ballistics testimony regarding the trajectory of the bullets; (2) why there were fewer bullet holes at the murder scene than there were exit wounds from the victim; (3) why there was an inconsistency in the dates between the time when the murder weapon was searched for and when it was found; (4) how a 5'5" defendant could have moved a 200 pound victim to the trunk of a car; and (5) why pathological testimony concerning the age of the corpse differed from the State's evidence of when the murder occurred.

■ After an examination of the record, we conclude that the points of inconsistency raised by the defendant either do not exist or were within the province of the jury to resolve. The evidence was sufficient for a jury to determine that the defendant was guilty beyond a reasonable doubt. *State v. Greenawalt,* 128 Ariz. 388, 626 P.2d 118 (1981).

### EFFECTIVE ASSISTANCE OF COUNSEL

We have discussed two standards for ineffective assistance of counsel: the farce, sham or mockery test, see *State v. Williams,* 122 Ariz. 146, 593 P.2d 896 (1979), or the reasonably competent and effective "dili-

gent conscientious advocate," *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir. 1978), cert. denied 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979), see also *State v. Ortiz,* 131 Ariz. 195, 639 P.2d 1020 (1981). Applying both standards to the facts herein, we will discuss defendant's claim that he was not adequately represented by counsel.

### 1. *Failure to go to Texas for interviews*

■ On 26 June 1979, defense counsel was granted a motion to expend funds to travel to Austin, Texas, to interview persons with whom defendant was associated during his incarceration before being extradited to Arizona. There is no evidence that counsel used these funds, and the trip to Austin was never made. Defendant cites this omission as prejudicial to his case and as evidence that counsel was ineffective. Although the defendant is obscure as to exactly what these persons could testify, defendant's apparent position is that by interviewing and asking that subpoenas be issued for these persons to testify, counsel would have been able to establish physical abuse at the hands of the Austin police officers. His fellow inmates, defendant says, could have testified to his injuries suffered at the hands of the Austin authorities during his arrest. This failure on the part of counsel to go to Texas affects only the issue of the admissibility of the confession and evidence to be presented at the motion to suppress. Little, if any, evidence could have been gained concerning the crime itself. We regard counsel's failure to go to Texas to be relative to representation on the motion to suppress only and not as to the overall representation of defendant.

Since we have granted a new hearing on the motion to suppress, any deficiency in this regard will be cured by the new hearing. As to the trial itself, we find no error.

### 2. *Locating other witnesses*

■ The defendant's next instance of omission that he claims points to ineffective assistance of counsel is his lawyer's failure to locate, interview and subpoena a series of witnesses which defendant says would have

illustrated inconsistencies in the State's evidence and would have provided an alternative theory that was consistent with the State's evidence and yet point to his innocence. Besides the persons for whom the defendant cannot supply a surname, defendant contends that a man by the name of William Barody could have testified that it was he who discharged a firearm at the murder scene several months before the murder, and that the bullet struck the fireplace at a point where the State asserts that a bullet lodged after exiting the victim's body. After defense counsel had searched for Barody and discovered that he had left the State of Arizona, counsel apparently determined that a nationwide search would be fruitless and that his strategy at trial would be to infer that Robin Cyphers was so deluded by drugs that a reasonable doubt existed that the defendant did not commit the murder. Considering the facts of this case, we do not believe counsel's trial strategy unreasonable.

### 3. Chemical test

Defense counsel's failure to perform chemical tests on the batch of LSD pills from which Cyphers took her "four hits" is raised by defendant to show ineffective assistance of counsel. The defendant does not show how this omission prejudiced his case to a degree that would require a reversal of his conviction.

### 4. Admission of evidence and cross-examination

The remainder of the acts or omissions of defense counsel which defendant alleges prove ineffective assistance of counsel concern the failure to object to the admission of evidence and a failure to effectively cross-examine witnesses to exploit inconsistencies in the State's case. On one occasion, a picture of the defendant taken at the Pima County Jail was introduced by the State for the purpose of identification by a witness. Defendant contends that Rule 15, Arizona Rules of Criminal Procedure, 17 A.R.S., prohibits the admission of the photograph. We find no such proscription in Rule 15 nor anywhere else. There was no error in failing to object. At another point in the trial, pictures of the murder scene were introduced and the defendant claims that the police arranged items in the pictures to be consistent with Robin Cyphers' testimony. Failure to object, defendant claims, was error. The woman whose residence was used for the murder, however, testified for the State on direct examination that some of the items in the pictures did not appear as they did in her apartment. For example, the witness testified that an alarm clock that appeared in a picture and that Robin Cyphers had testified to staring at, was not in that room of her apartment. The State never attempted to conceal these arranged items from the jury, and defense counsel's failure to object was not error.

The matter is remanded to the trial court for a hearing within thirty days of the issuance of the mandate in this case to determine the motion to suppress pursuant to this opinion. If the court finds the confession to be neither voluntary nor admissible, then a new trial shall be ordered. If the court finds the confession to be voluntary and admissible, it shall forthwith advise this court of said finding. At the hearing, the trial court may consider testimony already given by the Texas deputies at the trial. State v. Stevenson, 104 Ariz. 313, 452 P.2d 106 (1969).

STRUCKMEYER, C. J., and HOLOHAN, HAYS and GORDON, JJ., concur.