847 P.2d 94

174 Ariz. 49

**In the Matter of a Member of the State Bar of Arizona, Donald E. WOLFRAM, Respondent.**

**No. SB–91–0040–D.**

**Disc. Comm. Nos. 86–1532, 87–0008 and 87–0227.**

Supreme Court of Arizona, En Banc.

Feb. 11, 1993.

Stewart & McLean by Harry A. Stewart, Jr., Phoenix, for respondent.

Harriet L. Turney, Chief Bar Counsel, Yigael M. Cohen, Bar Counsel, Phoenix, for State Bar of Arizona.

## OPINION

### FELDMAN, Chief Justice.

Donald E. Wolfram ("Respondent") appeals from the recommendation of the Arizona Supreme Court Disciplinary Commission ("Commission") that he be suspended from the practice of law for a period of eighteen months and pay restitution in the amount of $3,650.

The Commission found that during the course of representing a client in a criminal matter, Respondent lacked competence, lacked diligence, and failed to maintain proper client communication. Specifically, the Commission found that Respondent violated Ethical Rule ("ER") 1.1 (compe;ence), ER 1.3 (diligence), and ER 1.4 (communication), Rules of Professional Conduct, Rule 42, Ariz.R.Sup.Ct., 17A A.R.S. (hereinafter "Rule ____"). Additionally, the Commission found that Respondent failed to cooperate with the State Bar of Arizona in its attempt to resolve two unrelated complaints, in violation of Rules 51(h) and 51(i).

Although the Commission generally adopted the findings of fact and conclusions of law of Hearing Committee 6–G, it rejected the Committee's recommendation of a six-month suspension and instead recommended an eighteen-month suspension. Respondent argues that most of the conduct that the State Bar found improper, although unwise in hindsight, did not violate any ethical rule. Respondent additionally asserts that any violation that may have occurred does not warrant suspension. We have jurisdiction under Rule 53(e).

## PROCEDURAL HISTORY

The procedural history in this case is complicated. Although it is unnecessary to relate the entire record, an abbreviated explanation is helpful in understanding the disposition that we reach today. The State Bar filed three complaints against Respondent, one in July 1987, and the other two in July 1988. The most serious complaint involved Respondent's representation of a criminal defendant who was sentenced to twelve years in prison for her role in her child's death. The State Bar dismissed the substantive allegations of the other two complaints but argued, and the Commission found, that Respondent's lack of cooperation in resolving those matters violated Rule 51. Respondent does not contest these Rule 51 findings.

On three different occasions, Respondent and the State Bar have presented these matters to a hearing committee and the Commission. Twice, the committees and the Commission considered agreements for discipline by consent. On both occasions, the committees recommended, and the Commission agreed, that the agreements should be rejected because the sanction provided was not severe enough.

On October 26, 1990, Hearing Committee 6–G ("the Committee") heard the case that

is the subject of this appeal. The State Bar and Respondent submitted a Joint Memorandum of Counsel and a Stipulation as to Facts. The Committee unanimously recommended that Respondent be suspended for six months, that he obtain at least twenty-four hours of continuing legal education, and that the Commission accept Respondent's offer to make full restitution to his client for the fee paid for her criminal representation. Respondent filed his objection to the Committee's recommendation. Following a hearing, the Commission generally adopted the Committee's findings of fact and conclusions of law but recommended, with three members dissenting, that Respondent be suspended for eighteen months instead of six months.[1] Disciplinary Commission Report, filed May 9, 1991. With this procedural background, we turn to the facts established in the record.

## FACTS

### A. The Criminal Matter

The essential facts of the criminal matter are undisputed. Respondent's client was indicted for felony child abuse on July 22, 1984. Her indictment stemmed from the death of her 22–month-old child. The client's husband allegedly killed her child after she left the child with him, in direct violation of a court order. The client initially rejected a plea agreement, negotiated by her former attorney, that called for a maximum prison term of seven years. Instead, in September 1985, she hired Respondent, who agreed to handle her ·defense for a $10,000 flat fee. At the time, Respondent was experienced, having practiced in the field of criminal law for approximately twenty years.

Respondent acknowledges that he "fail[ed] to adequately present [his client's] defense ... and to provide certain other minimal services," Joint Memorandum of Counsel at 5, despite the fact that his client

faced a significant mandatory term of imprisonment if convicted of the charge. Specifically, during the course of the criminal representation, Respondent admits that he did *not* do the following:

1. Interview the prosecution witnesses prior to trial;

2. Read the transcript of the grand jury proceeding that resulted in his client's indictment;

3. Examine physical evidence, such as tapes of interviews and X-rays;

4. Interview prospective witnesses disclosed in the police reports;

5. Consult with his client on whether the case should go to the jury on lesser included offenses; and

6. Challenge venire persons who stated that they would be uncomfortable sitting as a juror in a child abuse case.

The Committee also found that Respondent failed to procure independent expert witnesses to analyze and/or develop testimony on the state's physical evidence and failed to object to expert testimony being offered on the ultimate issue of guilt. Despite his admitted shortcomings in the criminal representation, Respondent claims that he properly prepared for trial. His preparation included interviews with his client and some others, as well as examining police reports, the transcript of the original child abuse proceeding, and the file prepared by his client's former attorney.

Following trial, the jury convicted Respondent's client and the court imposed a sentence of twelve years. In August 1986, the client filed a petition for post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure, 17 A.R.S. ("Rule 32 Petition"). Through her public defender, she alleged that the representation provided by Respondent was not only ineffective but "wretched beyond all be-

---

1. It is unclear whether the Commission adopted the Committee's recommendation that Respondent obtain further legal education. The Commission, however, expressly declined to add any

probationary terms. Three members of the majority believed that Respondent's conduct warranted disbarment, while the three dissenters

lief."[2] The trial judge, without holding an evidentiary hearing, granted the petition and ordered a new trial. Respondent's client subsequently entered a very favorable plea agreement, receiving a one-year jail sentence, lifetime probation, and credit for time served.

## B. Failure to Cooperate with the State Bar

The other complaints are not connected with the criminal case. They involve disputes with two separate and unrelated clients. In both of these matters, the State Bar dismissed the substantive allegations; therefore, we do not discuss their factual bases. The State Bar, however, maintains that because Respondent failed to cooperate in the resolution of these complaints, discipline is warranted.

In both instances Respondent failed to reply in a timely manner to charges of misconduct. In the first case, the State Bar issued a letter to Respondent on January 12, 1987, advising him that he had been charged with professional misconduct and that a written response was required within twenty days. After receiving no reply from Respondent, the State Bar issued a second letter on February 10, 1987, requesting a response within fifteen days to the charges that accompanied the January 12 letter. On March 5, 1987, still having received no response, the State Bar issued another letter demanding that Respondent reply to the charges within ten days. Respondent did not reply until July 17, 1987, some six months after he received the first letter. The second incident involves nearly identical misconduct. Instead of responding within twenty days, as initially requested, Respondent again delayed, this time nearly seven months. Notably, all of the letters warned that the failure to cooperate was a violation of this court's rules. *See* Rule 51.

While Respondent does not contest that he violated Rule 51, he does offer an explanation. He maintains that although the

letters clearly required a response, he believed that the matters would handle themselves and therefore did not require his immediate attention. Respondent additionally asserts that because he was over-extended, with a case load exceeding two hundred open matters, he made a decision to handle pressing client concerns instead of responding to the State Bar inquiries.

## DISCUSSION

### A. Standard of Review

■ In disciplinary proceedings, this court acts as an independent trier of fact and law in the exercise of our supervisory responsibility over the State Bar. *In re Rantz,* 169 Ariz. 56, 57, 817 P.2d 1, 2 (1991); *In re Henry,* 168 Ariz. 141, 143, 811 P.2d 1078, 1080 (1991); *In re Lincoln,* 165 Ariz. 233, 235, 798 P.2d 371, 373 (1990). Nevertheless, we give deference and serious consideration to the reports of the committee and the Commission. *In re Rantz,* 169 Ariz. at 57, 817 P.2d at 2; *In re Henry,* 168 Ariz. at 143, 811 P.2d at 1080; *In re Lincoln,* 165 Ariz. at 235, 798 P.2d at 373. We must be persuaded by clear and convincing evidence that Respondent committed the violations charged. Rule 54(c); *see also In re Petrie,* 154 Ariz. 295, 297, 742 P.2d 796, 798 (1987). The State Bar has met its burden if it shows that it is "highly probable" that the allegations in the complaint are true. *In re Petrie,* 154 Ariz. at 297, 742 P.2d at 798.

### B. The Question of Respondent's Ineffective Representation

Respondent asserts that the omissions pertaining to the criminal case were part of a deliberate trial strategy, rather than a product of misconduct. He maintains that because his client refused any incarceration as part of a plea arrangement, his alternatives were very limited. According to Respondent, because no agreeable plea offer was available, he knew that he would have to try the case. Respondent believed his

---

would have approved the Committee's recommended six-month suspension.

2. The public defender again described Respondent's representation as "wretched" to the Committee.

client's "only defense," in light of her wishes and the overwhelming evidence against her, was to cast her husband as a "monster" and portray her, like her child, as a victim of her husband's tyranny. Respondent's Opening Brief at 7. Respondent maintains that this "lying in the weeds" defense did not necessitate that he contest most of the prosecution's case. Therefore, according to Respondent, significant investigation was unneeded and could alert the prosecution to his defense strategy.

▪ Implicit in Respondent's argument is the concept that Respondent's representation was not ineffective but, instead, part of a coherent strategy. Respondent cannot escape the fact that he defends his conduct by challenging the judge's ruling in the Rule 32 Petition granted as a result of his ineffective criminal representation. He cites numerous cases in which this court and others have held that conduct alleged to be similar to his did not warrant reversal based on a claim of ineffective assistance of counsel.[3] If, however, we were to rely on such authority, we simply could not ignore the one ineffective assistance of counsel case *directly on point*—his client's. Respondent would have us accept other ineffective assistance of counsel cases as persuasive in this proceeding but, at the same time, reject his case—truly the only case on all fours. This we decline to do. In a disciplinary matter arising from conduct that resulted in reversal based on ineffective assistance, we will not challenge the propriety of the earlier disposition in the Rule 32 Petition; therefore, we reject Respondent's arguments.

This does not mean, however, that the judge's findings in the Rule 32 Petition are binding in this matter. Respondent correctly maintains that the disposition of the Rule 32 Petition is not dispositive on whether Respondent violated our ethical rules. Given the differences between the two proceedings, the differing standards of proof,[4] and the fact that Respondent was not a party in the post-conviction proceeding, we decline to adopt a *per se* rule that successful post-conviction relief based on ineffective assistance of counsel automatically results in an ethical violation, or, conversely, that a denial of post-conviction relief will always insulate an attorney from professional discipline. This rule apparently represents the uniform rule followed by other courts. *See, e.g., Florida State Bar v. Sandstrom,* 609 So.2d 583, 584 n. 1 (Fla. 1992) (noting that most cases of ineffective assistance of counsel do not rise to the level of a disciplinary violation); *In re Riccio,* 131 A.D.2d 973, 517 N.Y.S.2d 791, 795 (1987) (finding that a prior ruling that attorney did not provide effective assistance of counsel did not necessarily establish the disciplinary violation of neglect); *Office of Disciplinary Counsel v. McKinney,* 668 S.W.2d 293, 296–97 (Tenn.1984) (holding that prior determination of whether attorney provided effective assistance is inadmissible in a subsequent disciplinary proceeding); *In re Lewis,* 445 N.E.2d 987, 989 (Ind.1983) (holding that successful post-conviction relief based on ineffective assistance of counsel is not controlling in a subsequent disciplinary matter).

▪ When a disciplinary proceeding follows successful post-conviction relief based on ineffective assistance of counsel, we consider the outcome of the Rule 32 Petition as final with regard to the question of whether a lawyer's representation was legally ineffective and prejudicial but do not necessarily equate such a finding with a violation of our ethical rules.[5] Although a

---

**3.** *See, e.g., Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Smith,* 158 Ariz. 222, 762 P.2d 509 (1988); *State v. Piatt,* 132 Ariz. 145, 644 P.2d 881 (1981); *State v. Flewellen,* 127 Ariz. 342, 621 P.2d 29 (1980); *State v. Dippre,* 121 Ariz. 596, 592 P.2d 1252 (1979); *State v. Stanley,* 123 Ariz. 95, 597 P.2d 998 (Ct.App.1979).

**4.** *Compare* Rule 32.8(c), Ariz.R.Crim.P. (requiring the defendant to show facts by a preponderance of the evidence and the state has the burden of proving any constitutional defect was harmless beyond a reasonable doubt), *and* Rule 54(c) and (d) (requiring bar counsel to establish allegations by clear and convincing evidence).

**5.** Although a finding of ineffective assistance of counsel will not automatically result in disciplinary action, it should impel the trial judge and the appellate courts to look at the circumstances and determine whether there is argu-

Rule 32 proceeding and a subsequent disciplinary proceeding may share the same universe of facts, this court must independently determine, under the proper standard, the existence of those facts salient to the disciplinary matter and whether those facts, even if identical to those established in the post-conviction proceedings, warrant discipline. *See McKinney,* 668 S.W.2d at 297; *Lewis,* 445 N.E.2d at 989. Therefore, in this case, we independently examine the record to determine whether Respondent's conduct violated the ethical rules as charged.

## C. Good Faith as an Element

Respondent argues that the focus of a disciplinary proceeding is subjective and discipline is not warranted so long as the attorney "had a good faith belief that what [the attorney] did was right at the time." Respondent's Opening Brief at 30. He argues that our holding in *In re Myers,* 164 Ariz. 558, 795 P.2d 201 (1990), supports the proposition that professional discipline is not appropriate unless the attorney knowingly and intentionally committed professional misconduct. Respondent maintains that because he was acting in good faith, there is not clear and convincing evidence that he knowingly and intentionally committed professional misconduct and therefore *Myers* mandates that no discipline be imposed. We disagree.

First, *Myers* is distinguishable from this case. In *Myers,* the lawyer was disciplined under our former Code of Professional Responsibility. *See* former Rule 29(a).[6] Two of the three rules that were alleged to be violated *required* that the violation be intentional. *See* Disciplinary Rule ("DR") 7–101(A)(1) and DR 7–101(A)(3). Moreover, the State Bar in that case expressly *charged* the lawyer with *intentional* misconduct. *In re Myers,* 164 Ariz. at 559, 795 P.2d at 202.[7] In the present case, Respon-

dent is charged with violating the current Rules of Professional Conduct. Unlike *Myers,* Respondent is not charged with an intentional violation of the disciplinary rules, nor do the rules at issues expressly require that intentional misconduct be shown. *See* ER 1.1, ER 1.3, and ER 1.4.

■ Second, *Myers* cannot be interpreted as broadly as Respondent claims. In *Myers,* the attorney's conduct at issue (failing to appear on behalf of his client at a scheduled deportation hearing) "could not be attributed to either a lack of desire or effort to serve his client." 164 Ariz. at 560, 795 P.2d at 203. Rather, the lawyer, after researching the issue, concluded that his appearance might confer jurisdiction and thus subject his client to deportation; therefore, he deliberately chose not to appear. *Id.* In reaching our decision in *Myers,* we recognized the complexity of the rules in immigration court and that the lawyer had to deal with legitimate uncertainties. *Id.* at 560 n. 2, 561, 795 P.2d at 203 n. 2, 204. Consequently, because the lawyer was charged with *intentional* misconduct, whether he had a "good faith belief [in a strategy] based on some tenable legal argument" became our central inquiry. *Id.* at 561, 795 P.2d at 204. Although an attorney's good faith may be an important consideration in a disciplinary proceeding, it need not always be the controlling issue, as in *Myers. Cf.* Charles W. Wolfram, *Modern Legal Ethics* 88–90 (1986) (discussing the *mens rea* requirement in disciplinary proceedings, noting that an improper motive generally is not required to impose discipline). We now turn to the merits of this case.

## D. The Violations

■ After reviewing the record and considering Respondent's arguments, we adopt the Committee and the Commission's

---

ably some infraction that should be called to the attention of the appropriate bar authorities.

**6.** The current Rules of Professional Conduct became effective February 1, 1985. *See In re Myers,* 164 Ariz. at 559 n. 1, 795 P.2d at 202 n. 1.

**7.** Specifically, the State Bar alleged that the lawyer intentionally failed to seek his client's lawful objectives in violation of DR 7–101(A)(1), intentionally neglected a legal matter in violation of DR 6–101(A)(3), and intentionally prejudiced his client's rights in violation of DR 7–101(A)(3). *In re Myers,* 164 Ariz. at 559, 795 P.2d at 202.

findings of fact. Additionally, we agree with the Committee and the Commission, and the record supports by clear and convincing evidence, that Respondent violated the ethical rules as charged.

### 1. *ER 1.1: Competence*

The Committee found, and the Commission agreed, that Respondent violated ER 1.1, which requires that "[a] lawyer shall provide competent representation ... [that] requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." We note that some of Respondent's acts and omissions, if viewed independently of one another, are not objectionable and may be explained by legitimate lawyering and trial strategy. Nevertheless, an examination of Respondent's conduct, in the aggregate, tells a much different story. Respondent's handling of the criminal matter fell far short of what is required of an experienced, competent attorney charged with such a serious task. It is true that any chosen defense may obviate the need for some investigatory work, but that strategy must be based on some *reasonable* investigation. The investigation takes on added importance when, as here, the stakes are high:

> Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more elaborate treatment than matters of lesser consequence.

ER 1.1 (comment); *see also In re Murray*, 147 Ariz. 173, 175, 709 P.2d 530, 532 (1985) (disbarring an attorney for engaging in a pattern of misconduct that included his failure to interview witnesses in a criminal matter in violation of former professional rules requiring competence).

Respondent's preparation was clearly deficient in light of what was at stake. According to Respondent, his client faced a mandatory prison sentence ranging from twelve to twenty-two years. Considering this, we fail to see how, for example, not reading the grand jury transcript, not examining physical evidence, and not discussing the possibility of lesser included offenses can be reconciled with *any* sensible defense strategy.

Respondent properly cautions that "hindsight is a meager measure of counsel's competency." Respondent's Opening Brief at 18 (quoting *State v. Flewellen*, 127 Ariz. 342, 344, 621 P.2d 29, 31 (1980)). Even allowing for this, we concur with the Committee and the Commission and reject Respondent's "lying in the weeds" defense as an explanation for his mishandling of the criminal matter. Respondent failed to take the most elementary steps in preparing a defense—steps that any competent lawyer would have taken. We are unpersuaded that this failure was dictated by rational strategy. If it was, it was certainly improper for him to fail to adequately investigate the facts before evolving this strategy. *Cf.* Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* 7 (Student Edition 1985) (distinguishing erroneous but "rational choice of trial tactics" that will not violate ER 1.1 from "the failure to inquire into key facts" that may violate ER 1.1). Nor was it proper for Respondent to assume that an investigation was unnecessary because he believed that one had already been conducted. We therefore agree with the Committee and the Commission and conclude that Respondent failed to provide competent representation in violation of ER 1.1.

### 2. *ER 1.3: Diligence*

The Committee found, and the Commission agreed, that Respondent violated ER 1.3, which requires that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Diligence requires the exercise of caution and care in the handling of legal matters. *See* 26A C.J.S. *Diligence* 943–46 (1956) (defining "diligence" in many contexts and citing cases); Webster's Third New International Dictionary 633 (unabr. 1965). Surely, Re-

spondent's conduct is not consistent with these notions. Respondent conceded that his attention was shared by more than two hundred other matters and that his judgment at the time he handled this matter "may have been clouded." Although Respondent's unwieldy workload helps us understand why he lacked diligence, it does not excuse his conduct. *See e.g., In re Cardenas*, 164 Ariz. 149, 151, 791 P.2d 1032, 1034 (1990). A lawyer must not accept representation if the lawyer's workload prohibits handling a matter in compliance with our professional rules. *See State v. Smith*, 140 Ariz. 355, 363, 681 P.2d 1374, 1382 (1984) (warning "that accepting mores cases than can be properly handled may result not only in reversals for failing to adequately represent clients, but [also] in disciplinary action"); ER 1.3 (comment) ("A lawyer's workload should be controlled so that each matter can be handled adequately."). If Respondent was too busy to provide competent, diligent representation, he should have either hired adequate help or refused the case—and the fee.

Respondent's conduct demonstrates, clearly and convincingly, a lack of diligence by failing to adequately prepare for the criminal trial as well as failing to consult his client regarding the possibility of the jury's consideration of lesser included offenses, *see In re Espino*, 168 Ariz. 139, 141, 811 P.2d 1076, 1078 (1991) (failing to adequately communicate with client demonstrates a lack of diligence). We therefore concur with the Committee and the Commission and conclude that Respondent failed to provide diligent representation in violation of ER 1.3.

### 3. *ER 1.4: Communication*

The Committee found, and the Commission agreed, that Respondent violated ER 1.4. ER 1.4(a) and (b) require that "[a] lawyer shall keep a client reasonably informed about the status of a matter ... and explain [it] to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *See In re Cardenas*, 164 Ariz. at

151, 791 P.2d at 1034 (finding the failure to notify clients of important matters and explain them to ensure informed decision making violated ER 1.4). By not consulting with his client about the possibility of instructing on lesser included offenses, Respondent failed to keep his client informed about the status of her criminal trial. She was deprived of her right to participate in this very important decision. Even though the lawyer is responsible for the means chosen to pursue a client's objectives, informing the client regarding the essentials of those means is still required. *See* ER 1.4 (comment).

The fact that Respondent's client was adamant about staying out of prison did not excuse him from his obligation of consulting her when making this significant decision. We reject Respondent's contention that an explanation of lesser included offenses was unnecessary because an "all-or-nothing" defense was an "implicit" objective of the representation and, therefore, it can be "inferred" that Respondent's strategy was agreeable to his client. Respondent's Opening Brief at 28. This sort of implicit agreement plainly does not comply with ER 1.4.

We need not decide exactly what is needed to comport with ER 1.4. It is sufficient to hold that Respondent's inferences based on an implicit agreement fall far short of compliance. A lawyer has an obligation to explain the problem, lay out the significant choices, and help the client make an informed, rational decision. Respondent's failure to consult with his client regarding the possibility of instructing the jury on lesser included offenses demonstrates, clearly and convincingly, that Respondent violated ER 1.4. We therefore agree with the Committee and the Commission and conclude that Respondent failed to communicate properly with his client in violation of ER 1.4.

### 4. *Rule 51: Cooperation*

Rule 51 [8] sets out the grounds for attorney discipline, which include:

**8.** Rule 51 has been amended effective Jan. 1,

1992. *See* Rule 51 (Supp.1992). The amend-

(h) Failure to furnish information to or respond promptly to any inquiry or request from bar counsel, a hearing committee, the board, the commission or this court, made pursuant to these rules for information relevant to complaints, grievances or matters under investigation concerning conduct of a lawyer, or failure to assert the ground for refusing to do so . . . .

(i) Evading service or any other refusal to cooperate with officials and staff of the state bar or a conservator appointed under these rules acting in the course of their duties.

Respondent does not contest the Committee and the. Commission's conclusion that he violated Rule 51(h) and (i) when he failed to respond timely to the State Bar inquiries. We find Respondent's excuse—that he had too many legal matters on hand to make prompt response to the State Bar's inquiries—worse than unpersuasive. Thus, we find that the facts support, by clear and convincing evidence, that Respondent violated Rule 51(h) and (i).

## SANCTION

 In determining the appropriate discipline, we are guided by the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) ("ABA *Standards*"). *In re Rantz*, 169 Ariz. at 57, 817 P.2d at 2. The purpose of professional discipline is to protect the public, the administration of justice, and the integrity of the legal system. *Id.* Our purpose, therefore, is not to punish. *Id.* In reaching our decision, we consider (1) the duty violated, (2) the lawyer's mental state, (3) the actual or potential injury caused by the lawyer's misconduct, and (4) the existence of aggravating or mitigating factors. *Id.;* Standard 3.0, ABA *Standards*, at 25.

### A. The Duties Violated

We agree with the Committee and the Commission and find that Respondent violated ER 1.1, ER 1.3, ER 1.4, and Rule 51(h) and (i), as discussed.[9] We note and consider that these violations occurred in the course of representation in a very serious criminal matter. What might be excusable in handling a traffic violation is not to be tolerated in a charge such as this.

### B. Respondent's Mental State

The record before this court indicates that Respondent, during the time at issue, was under a great deal of stress caused by the burden of managing his law office. The record does not support, nor do we find, that Respondent intentionally sought to injure his client.

### C. Actual or Potential Injury

Respondent's misconduct in handling the criminal matter created a grave risk of serious injury to his client. Although it is unclear whether Respondent's client actually spent additional time incarcerated as the result of Respondent's misconduct, the potential for such injury is clear. Respondent's client was sentenced to twelve years in prison. Following her successful Rule 32 Petition, she negotiated a plea to a lesser offense and received a sentence of one year, with credit for time served, and lifetime probation. Because substantial prison time was mandatory for the charges that Respondent's client was facing, the risks of actual injury in mishandling the case were obvious from the inception of the representation.

### D. Aggravating and Mitigating Circumstances

The Committee found Respondent's prior disciplinary offenses,[10] a pattern of misconduct relating to his failure to cooperate with the State Bar, his lack of remorse, and

---

ments do not affect our determination.

**9.** Respondent claims that he was prejudiced by the Commission's consideration of matters previously withdrawn by the State Bar. Even assuming this to be true, Respondent ultimately

suffers no prejudice because our review did not consider such matters.

**10.** Respondent has received informal reprimands for other misconduct on two prior occasions.

his substantial experience in the practice of law to be aggravating circumstances. *See* Standard 9.22, ABA *Standards*, at 49. Mitigating circumstances found by the Committee include Respondent's cooperation with the public defender's office in its efforts to overturn the criminal conviction, his offer to pay restitution, and the delay involved in these proceedings. *See* Standard 9.32, ABA *Standards*, at 50. The Commission adopted the Committee's findings but rejected the finding that cooperation with the public defender should be considered a mitigating circumstance and added the presence of multiple offenses as an aggravating circumstance.[11]

## E. The Appropriateness of Suspension

Although the Committee and the Commission agreed that suspension was appropriate, the Committee recommended a six-month suspension, while the Commission recommended eighteen months instead. The ABA *Standards* speak to when suspension is warranted.

When a lawyer lacks competence and violates our professional rules, "[s]uspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client." Standard 4.52, ABA *Standards*, at 33. As to the lack of diligence:

> [S]uspension is generally appropriate when:
>
> (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
>
> (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

Standard 4.42, ABA *Standards*, at 32. Respondent also admits that he violated the ethical rules by failing to respond to bar inquiries in a timely manner. The Committee and the Commission also considered this violation when they determined that

suspension was the appropriate remedy. Standard 7.0 governs duties owed to the profession and provides that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." Standard 7.0, ABA *Standards*, at 45. With this in mind, we turn to our determination of the appropriate sanction.

## F. Sanction Imposed

In light of the deference that we give to the Commission's recommendation and the ABA Standards that guide our determination, a majority of the court believes that an eighteen-month suspension is the appropriate sanction. Respondent's lack of competence and diligence, and his failure to properly communicate with his client are especially egregious in light of what was at stake in his representation. *Cf. In re Cardenas*, 164 Ariz. at 152, 791 P.2d at 1035 (noting that more serious potential or actual injury justifies more severe sanction); Debra T. Landis, Annotation, *Negligence, Inattention, or Professional Incompetence of Attorney in Handling Client's Affairs in Criminal Matters as Grounds for Disciplinary Action—Modern Cases*, 69 A.L.R. 4th 410, 418 (1989) (noting that neglect in criminal representation is "particularly reprehensible" because a client may be in jail while waiting for an attorney to take action). Respondent knowingly failed to provide indispensable services to his client, resulting in, at the very least, potentially serious injury. *See* Standard 4.42, ABA *Standards*, at 32. Although Respondent contests the Commission's findings of aggravating and mitigating circumstances, particularly as to his lack of remorse, a majority believes that the Commission considered the proper mitigating and aggravating circumstances and defers to their assessment.

---

11. Respondent asserts that the Commission did not consider any mitigating factors at all. Although it is true that the Commission did not discuss each of the Committee's findings regarding the mitigating circumstances, it did expressly reject one of them. *See* Commission Report at 7. We believe that the Commission would have similarly treated any other mitigating factor it chose to reject. Thus, we conclude that the Commission accepted all of the same mitigating circumstances, with the exception of cooperation with the public defender.

Although we attempt to achieve proportionality when imposing discipline, we tailor the sanction in each situation to the facts of the case. *In re Murray,* 159 Ariz. 280, 283, 767 P.2d 1, 4 (1988). The majority believes that Respondent's egregious conduct warrants the sanction imposed.[12]

Respondent is therefore suspended for eighteen months, effective thirty days from the filing of this opinion. We also adopt the recommendations of the Committee that Respondent, during the period of suspension, obtain twenty-four hours of continuing legal education covering relevant topics.[13] We further accept Respondent's offer to make full restitution to his criminal client in the amount of $3,650. Finally, we order Respondent to pay $3,849.40 in costs to the State Bar.

CORCORAN, Justice, specially concurring.

I

This disciplinary case raises a peripheral question: can an inadequate defense be the "best" defense by an attorney?

Objectively, the client-defendant benefitted by respondent's inadequate and incompetent representation. Under the first plea agreement presented to the client by a previous attorney, there was a maximum sentence of 7 years. The client rejected that offer. As a result of going to trial while represented by respondent, the client-defendant received a 12–year sentence. After the trial court determined that client-defendant was convicted because of inadequate representation by respondent, the client through a successor deputy public defender, got a second plea agreement which provided for a one-year jail sentence.

Respondent says that his representation of client-defendant involved a "deliberate trial strategy." Although the record indicates to us that respondent did not "intentionally" seek to injure the client-defendant, one may reasonably ask whether respondent sought to "intentionally" benefit the client-defendant. Although the record presents this question, the record does not answer it.

Since the client-defendant had rejected the first plea agreement, respondent's inadequate representation created a no-lose situation for the client-defendant. If his "deliberate trial strategy" proved successful, the client-defendant would be found not guilty; if the client-defendant was found guilty (as she was), she would be no worse off and might be better off (as she was). An attorney who intentionally seeks to bring about such a result should be the subject of special condemnation.

The facts of this case would require that the trial judge report respondent's misconduct to the State Bar. Canon 3(B)(3), Ari-

---

**12.** The author of the opinion, however, believes that the Commission failed to properly weigh certain mitigating circumstances and would impose a shorter suspension. First, the record does not support the Commission's failure to adopt Respondent's cooperation in the Rule 32 Petition as a mitigating factor. The only person who could assess Respondent's cooperation, the public defender, described him as "very cooperative." *See* Reporter's Transcript, Oct. 26, 1990, at 35, 39. Nothing in the record suggests that this characterization is inaccurate. Respondent's cooperation minimized the ultimate harm to his client and therefore should mitigate his sanction. *See* Standard 9.32(d), ABA *Standards,* at 50. Also, the delay in the disposition of this matter is particularly relevant. During the years that this matter has been pending, Respondent has made significant changes in his practice of law. These changes include an overhaul of his office management techniques and, more important, a significant reduction in his caseload. Respondent's decision to discontinue his criminal practice, together with the remedial steps taken in the management of his law practice, significantly reduce the possibility that Respondent will again engage in this type of misconduct. These circumstances should also mitigate the sanction. *See In re Espino,* 168 Ariz. at 140–41, 811 P.2d at 1077–78 (mitigating sanction because lawyer removed himself from private practice to a different job that did "not involve him in the same sort of activities that led to the Bar complaints"); Standard 9.32(j), ABA *Standards,* at 50 (interim rehabilitation is a mitigating factor). Of weight also is the State Bar's recommendation that the suspension not exceed six months. *See* State Bar's Answering Brief at 11.

**13.** Because Respondent has eliminated criminal law from his practice, we adopt the Committee's recommendation that criminal law not be one of the covered topics.

zona Code of Judicial Conduct. The prosecutor had the same obligation. Ethical Rule 8.3(a), Arizona Rules of Professional Conduct.

## II

I disagree with the Chief Justice that this court (and the commission) should consider as a mitigating circumstance respondent's "cooperation" with the deputy public defender who succeeded him in representing client-defendant at 59 n. 12, 847 P.2d at 104 n. 12. The deputy public defender indicates that respondent "was very cooperative." Respondent could not *not* cooperate; he did no more than admit that which was undeniable. It should also be kept in mind that they both represented the same client-defendant.

I cannot consider this "cooperation" as mitigating; at most, I can only consider it to be neutral.

MARTONE, Justice, concurring in the judgment and in the opinion in part.

I join in the judgment of the court and in all but part B, "The Question of Respondent's Ineffective Representation," of the opinion. *Ante*, at 52–53, 847 P.2d at 97–98. Neither the State Bar nor the respondent has argued that the Rule 32 finding and ruling on the denial of effective assistance of counsel is binding in this proceeding. Both acknowledge that because the respondent was not a party to the Rule 32 proceeding, and because of the different standard of proof, there is no preclusive effect. It is for these two reasons that the respondent is entitled to a full and fair hearing before the State Bar.

That being the case, I do not understand the sense in which the court considers "the outcome of the Rule 32 Petition as final with regard to the question of whether a lawyer's representation was legally ineffective and prejudicial but do[es] not necessarily equate such a finding with a violation of our ethical rules." *Ante*, at 53, 847 P.2d at 98. Because the conduct in the Rule 32 petition is the same as the conduct that would violate ER 1.1, if the outcome is in any sense "final," there has been preclu-

sion. The court says that the respondent cannot relitigate the Rule 32 finding but, nevertheless, is not bound by it anyway. But if one cannot relitigate, one is bound. If one is not bound, one can relitigate. I would say that because the respondent, a nonparty, is not bound by it, the finding in the Rule 32 setting is not final or preclusive in the disciplinary proceeding. To suggest otherwise is to suggest that the conduct is different when it is in fact the same.

ER 1.1, Rules of Professional Conduct, provides that:

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

A lawyer deprives a client of effective assistance of counsel under the Sixth Amendment when the representation falls below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The Sixth Amendment relies on "the legal profession's maintenance of standards." *Id.*, at 688, 104 S.Ct. at 2065. In essence, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* Of course, to show denial of effective assistance of counsel, one must show not only deficient performance, but also prejudice to the defendant's case. *Id.* at 687, 104 S.Ct. at 2064. The defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. It is, therefore, plain that one cannot deny a client effective assistance of counsel under the Sixth Amendment and at the same time provide "competent representation to a client" within the meaning of ER 1.1.

This is not to say that in every case of denial of effective assistance of counsel there will be a successful finding of a violation of ER 1.1. First, the lawyer will have an opportunity to participate in the disciplinary proceeding and, therefore, the outcome may change. Secondly, the standard

of proof is significantly higher in a disciplinary setting. Thirdly, the presence of mitigating factors in a disciplinary setting may be so enormous that, notwithstanding incompetence, the complaint will be dismissed. This, of course, does not convert incompetent representation into competent representation. It simply means that discipline may be inappropriate.

Because I believe that, normatively, the conduct which results in a denial of effective assistance of counsel necessarily implicates a denial of competent representation under ER 1.1, I would hold that in every such case, the trial judge who presides over the proceeding in which the ineffective claim is successful should refer the matter to the State Bar of Arizona for investigation. The trial judge is not in a position to screen such cases. That is the State Bar's task. Thus, while there is no *per se* rule that successful post conviction relief based on ineffective assistance of counsel will automatically result in an ethical violation, there should be an automatic reference to the State Bar so that those charged with the responsibility to enforce the Rules of Professional Conduct can review all such circumstances.

I, therefore, reject the court's approach that leaves open the possibility that conduct which denies a defendant effective assistance of counsel could nevertheless be competent representation within the meaning of ER 1.1.

MOELLER, V.C.J. and ZLAKET, J., recused themselves and did not participate in the determination of this matter.