767 P.2d 1

**In the Matter of a Member of the State Bar of Arizona Stanley David MURRAY, Respondent.**

**No. SB–88–0008–D.**

Supreme Court of Arizona,
En Banc.

Dec. 1, 1988.

William K. Whissen, Phoenix, for respondent.

Stanley D. Murray, Phoenix, pro se.

Jones, Skelton & Hochuli by Larry J. Cohen, Phoenix, for State Bar of Arizona.

## OPINION

BROOKS, Court of Appeals Judge.

This is an original proceeding for disciplinary action against respondent Stanley David Murray, a member of the Arizona State Bar. Respondent objects to the disciplinary commission's recommendation that he be suspended from the practice of law for four years. We have jurisdiction pursuant to Rules 46 and 53(e), 17A A.R.S. Sup.Ct.Rules.

On January 20, 1987, the state bar filed a formal complaint against respondent, charging him with unethical conduct arising out of his representation of Ms. Sidney Goldberg.[1] The complaint alleged that respondent, after obtaining funds in settlement of a lawsuit that he had filed on behalf of Ms. Goldberg:

(1) failed promptly to deliver settlement proceeds to his client in spite of her requests therefor. DR 9–102(B)(4);

(2) engaged in illegal conduct involving moral turpitude and in conduct involving dishonesty, fraud, deceit, or misrepresen-

---

**1.** The conduct in question occurred prior to the adoption of the Rules of Professional Conduct, Rule 42, 17A A.R.S. Sup.Ct.Rules, effective February 1, 1985. This matter was therefore con-
sidered under the Code of Professional Responsibility. *See* former Rule 29, 17A A.R.S. Sup.Ct. Rules, 1987 Supplemental Pamphlet at 438.

tation when he misappropriated his client's funds for his own private and personal benefit. DR 9–102(A)(3), 9–102(A)(4); and

(3) intentionally lied to his client in order to conceal the whereabouts and disposition of her funds. DR 7–102(A)(3), 7–102(A)(5).

Respondent admitted the allegations and requested a hearing in order to present evidence in mitigation. The hearing committee found that respondent had committed the ethical violations alleged. In light of respondent's conduct following Ms. Goldberg's complaint to the state bar, including his restitution of all funds, plus interest, and his "nearly complete" withdrawal from the practice of law, as well as the strong, supportive testimony of his current and former employers, the committee recommended that respondent be suspended from the practice of law for six months and one day. Both respondent and bar counsel objected to the proposed suspension. Respondent complained that it was too severe; bar counsel urged that it was too lenient.

Upon review, the disciplinary commission rejected the hearing committee's recommendation and issued its own report, initially recommending disbarment. After hearing oral argument and a statement by respondent, however, the disciplinary commission vacated its earlier report and, adopting the committee's findings of fact and conclusions of law, issued an amended report in which it recommended a four-year suspension.

The only question before us is whether the evidence justifies the sanction recommended by the disciplinary commission. It is the duty of this court to make an independent determination of the facts from the record, and the findings and recommendations of the hearing committee and disciplinary commission, though entitled to serious consideration, do not bind us. *See Matter of Lurie*, 113 Ariz. 95, 546 P.2d 1126 (1976). Nevertheless, the burden is upon the one objecting to those findings and recommendations to show that they are not supported by the evidence or that

they are erroneous or unlawful. *Matter of Haggard*, 123 Ariz. 27, 597 P.2d 180 (1979).

The facts that are necessary for a determination of this matter are as follows. Respondent was admitted to practice law in Arizona in May 1982. Unable to secure employment with a law firm, he contracted to perform legal research for other lawyers while attempting to develop his own practice. In November 1982, he was retained by Ms. Goldberg to represent her in an action that she wanted to file against Budget Rent–A–Car.

By March 1984, respondent had succeeded in obtaining a settlement of $6500 for Ms. Goldberg. The intervening 16 months, however, had been a time of professional and economic struggle for him. Although his professional prospects were improving, and he had lately associated with a law firm, he remained heavily in debt.

In May 1984, when respondent received the settlement draft, he decided that the only way to avoid bankruptcy was to retain not only the $1700 in legal fees to which he was entitled, but also the $4700 that belonged to Ms. Goldberg. Over the following seven months, he lied repeatedly to Ms. Goldberg in order to conceal his wrongdoing, inventing various excuses to explain his delay in forwarding the proceeds to her. When she directed her inquiries to respondent's employers, he lied to them as well.

In December 1984, Ms. Goldberg telephoned respondent to inform him that she was about to file a complaint against him .with the state bar. Respondent confessed to Ms. Goldberg and assured her that he would soon be mailing her a check to cover all that he owed her, including interest. He continued to deceive his employers, however. Not until January 1985, when they received a copy of Ms. Goldberg's complaint to the state bar, did they become aware of respondent's conduct. They confronted him, and again he admitted his wrongdoing.

Shortly thereafter, respondent did indeed make full restitution to Ms. Goldberg. After conducting some research regarding the sanctions that have been imposed for misconduct like respondent's, he and his

employers concluded that his continued employment would reflect poorly upon the firm. It was decided that he would resign.

In March 1985, in response to Ms. Goldberg's complaint, respondent wrote to the state bar, describing his representation of Ms. Goldberg and providing details of his unethical conduct. With the hope of mitigating the discipline to be imposed, he explained that his misconduct had been the result of overwhelming economic pressures and that he had since made restitution to Ms. Goldberg. He stated his intention to refrain from representing clients and accepting fees pending the outcome of this disciplinary matter. Finally, he expressed his personal distress and remorse at having betrayed his client's trust and his own ethical obligations.

While awaiting the institution of formal proceedings against him, respondent substantially, though not completely, removed himself from the practice of law. He did accept several cases on a *pro bono* basis, for which he accepted no fees. On one occasion, unable to find another attorney to assume responsibility for a case that he had previously undertaken, he agreed to remain as counsel of record and to accept fees as such. For the most part, however, his professional activities were limited to those commonly performed by law clerks and paralegals.

Formal proceedings were not instituted against respondent until January 1987, two full years after the state bar received Ms. Goldberg's complaint. The course of those proceedings has been described above. Respondent has been candid and cooperative throughout the investigation of this matter. He has repeatedly acknowledged, before the hearing committee, the disciplinary commission, and this court, the egregious nature of his misconduct. Nevertheless, he now argues that a four-year suspension is excessive in light of the mitigating circumstances that are present in this case. We agree.

■ The objective of disciplinary proceedings is not to punish the offender, but to protect the public, the profession, and the administration of justice. *Matter of*

*Couser*, 122 Ariz. 500, 596 P.2d 26 (1979). Consequently, in determining the appropriate sanction to be imposed, we should focus on such considerations as the maintenance of the integrity of the profession in the eyes of the public, the protection of the public from unethical or incompetent lawyers, and the deterrence of other lawyers from engaging in unprofessional conduct. *See Matter of Kleindienst*, 132 Ariz. 95, 105, 644 P.2d 249, 259 (1982) (Feldman, J., dissenting).

■ The American Bar Association has provided a set of guidelines for imposing sanctions once a lawyer's misconduct has been established. *See* ABA, *Standards for Imposing Lawyer Sanctions* (hereinafter "ABA Standards"), Standard 1.3 (1986). In imposing a sanction for lawyer misconduct, a court should consider: "(a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0.

■ In the instant case, respondent violated duties that he owed to his client. He knowingly converted Ms. Goldberg's property to his own use and intentionally deceived her in order to benefit himself, all to her injury. Absent mitigating factors, such misconduct warrants disbarment. *See e.g., Matter of Davis*, 129 Ariz. 1, 628 P.2d 38 (1981); *Matter of Campbell*, 108 Ariz. 200, 495 P.2d 131 (1972). *See also* ABA Standards 4.11, 4.61.

■ Nevertheless, we have recognized that extenuating factors may call for the imposition of a lesser sanction. *See Matter of Rubi*, 133 Ariz. 491, 652 P.2d 1014 (1982) (misconduct was an isolated incident and restitution was made in full); *Matter of Couser*, 122 Ariz. 500, 596 P.2d 26 (1979) (respondent had made restitution, engaged in *pro bono* legal work, and suffered from a mental illness that was causally related to his misconduct).

Respondent characterizes many of the circumstances in his own case as mitigating. Among the factors to which he directs our attention are the following: (1) he

has no prior disciplinary record; (2) he has made complete restitution to his client; (3) he has been candid and cooperative in his attitude throughout the disciplinary proceedings; (4) his current and former employers have testified in support of his good character, reputation, and professional competence; (5) he has acknowledged the seriousness of his misconduct and has repeatedly expressed his remorse; (6) he has provided substantial *pro bono* service to the public; and (7) he has already endured at least a two-year, self-imposed "suspension," the length of which was due, in part, to the state bar's delay in instituting formal proceedings against him.

We are persuaded, as was the commission, that these factors are sufficient to call for a sanction less severe than disbarment. Whether they are sufficient to mitigate the sanction still further is a more difficult question.

Respondent points to cases in which the sanction imposed for misconduct similar to his own has been more lenient than that recommended in this case. Bar counsel responds by citing cases in which attorneys have been disbarred for less. Although the question of proportionality is appropriate, our obligation is to tailor the discipline in each situation to the facts of the case. *Matter of Wines*, 135 Ariz. 203, 660 P.2d 454 (1983).

We will put aside, for the moment, consideration of the period of at least two years during which respondent voluntarily limited his professional activities. In light of the remaining mitigating factors in this case, we believe that a two-year suspension would be sufficient to protect interests of the public, the profession, and the administration of justice. Respondent's misconduct represents an isolated incident and, in view of the evidence regarding his character, his attitude with respect to the disciplinary process, and his expressions of grief and regret at his own behavior, one that is not likely to be repeated.

Bar counsel has suggested several times that part of any period of suspension imposed might be "suspended" in recognition of respondent's conduct since his infrac-

tions. We believe that the facts warrant such relief, whether it is characterized as "suspension" of part of the sanction imposed or as "credit" against the term of his suspension from practice. We reach this conclusion in consideration of respondent's lengthy self-imposed retreat from the practice of law, during which the filing of a formal complaint against him was unaccountably delayed. In that regard, we are unimpressed by bar counsel's avowal that the delay resulted primarily from Ms. Goldberg's reluctance to cooperate in the investigation. The state bar was in possession of sufficient facts to warrant the filing of a formal complaint against respondent by July 1985, when it completed its probable cause review. Nevertheless, an additional 17 months would pass before formal disciplinary proceedings were instituted.

We order that respondent be suspended from the practice of law for a period of two years, with credit given for one. Pursuant to Rule 53(e)(3), it is also ordered that costs be assessed against respondent in the amount of $918.30.

GORDON, C.J., HOLOHAN and MOELLER, JJ., and FIDEL, Court of Appeals Judge, concur.

FELDMAN, V.C.J., did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, J. THOMAS BROOKS, Judge, Court of Appeals, Division One, was designated to sit in his stead.

CAMERON, J., did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, NOEL FIDEL, Judge, Court of Appeals, Division One, was designated to sit in his stead.