859 P.2d 1315

**In the Matter of a Member of the State Bar of Arizona, John Anthony FIORAMONTI, Respondent.**

No. SB–92–0040–D.
Disciplinary Commission No. 89–1327.

Supreme Court of Arizona,
In Division.

Sept. 2, 1993.

Bryan Cave by Mark I. Harrison and Stephen G. Montoya, Phoenix, for respondent.

Harriet L. Turney, Chief Bar Counsel, Phoenix.

Lewis and Roca by Michael O. Miller and Joni M. Wallace, Volunteer Bar Counsel, Tucson, for State Bar of Arizona.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

This is a State Bar disciplinary proceeding. At the committee level, two members recommended disbarment and one recommended a four-year suspension. At the commission level, five members recommended a three-year suspension and four recommended disbarment. Both sides ap-

peal. We have jurisdiction pursuant to Ariz.R.Sup.Ct. 46(a).

## FACTS

### I. Facts Leading to Christine's Complaint

John Anthony Fioramonti (respondent) has been a member of the State Bar since 1976. He has no prior disciplinary record. On November 4, 1985, he met with a client, Frank, regarding representation in a matter known as the Terson lawsuit. Respondent had earlier represented both Frank and his wife, Christine, in business matters. Since that time, Frank and Christine were divorced in proceedings in which respondent was not involved.

At their November 1985 meeting, Frank told respondent that he was being sued for back rent on a restaurant. He told respondent that Christine had called him, was very upset, and wanted him to take care of the matter. Frank showed respondent a copy of a property settlement agreement wherein he agreed to indemnify, defend, and hold Christine harmless for any losses incurred with respect to the restaurant that was the subject of the lawsuit. Respondent accepted Frank's explanation and filed an answer and cross-claim for both Frank and Christine on November 7, 1985.

Respondent neither contacted nor attempted to contact Christine before undertaking her representation. Nor did he inform her that she was a defendant in the lawsuit, that he had appeared on her behalf, or that he had filed an answer and cross-claim for her. He did not independently determine whether Christine had tendered her defense to Frank or whether she had been served with the lawsuit. Nor did he attempt to determine what defenses, if any, she may have had to the lawsuit. In his answer and cross-claim, however, respondent admitted that Christine had executed the lease, and he did not challenge the sufficiency of process. In fact, Christine had not been served with the lawsuit, and she had not signed the restaurant lease. The answer and cross-claim were verified by Frank.

In March 1986, in the dissolution proceeding, Christine filed an order to show cause (OSC) against Frank concerning the property settlement agreement. Basically, she alleged that Frank had not maintained an insurance policy for which he was responsible. Frank asked respondent to represent him in the OSC proceeding. Respondent told Frank that he could do so only if Christine's lawyer, Jerry Laney, waived any potential conflict. Respondent discussed the possible conflict with Laney, but did not mention the pending Terson suit. Instead, respondent told Laney only that he had represented the couple in prior business matters. Laney states he then discussed the situation with Christine, and she waived any potential conflict. Christine, however, denies that such a conversation took place. In any event, no written waiver was executed, but Laney told respondent that there was no problem. Laney also testified that, had he known about the Terson lawsuit, he would not have changed his advice to Christine about waiving any potential conflict.

After an unfavorable result in the OSC proceeding, Frank fired respondent on December 16, 1986, and took his files to the Barassi and Burris law firm, later known as Barassi and Curl. Included in the files was the Terson lawsuit. Frank then filed for bankruptcy protection, which stayed the Terson matter as to himself but not as to Christine. Even though he had been fired, respondent gave notice of the stay to the trial court on February 17, 1987. Respondent did not, however, inform Christine and took no further action to protect Christine's interests. When a co-defendant filed a cross-claim against Christine on May 26, 1988, respondent attempted to withdraw from Christine's representation, but the trial judge would not allow it absent Christine's consent.

As a result, respondent wrote to Christine on August 25, 1988. This was the first contact he had with her concerning the Terson case. He told Christine that he had been defending her on behalf of Frank but did not consider himself to be her attorney since they had no relationship and she had

paid him no fees. He also informed her of a November trial date and requested her consent for his withdrawal. Christine contacted Sally Darcy, her attorney in Tucson, who wrote to respondent on September 27, 1988, advising him that Christine would expect reimbursement for the fees that she incurred in defending the cross-claim. Darcy told respondent that Christine had not known of the Terson lawsuit and pointed out that respondent had not communicated with Christine concerning it. Respondent then wrote to Darcy offering to get a continuance of the trial date, but claiming that he owed Christine no fees and that he would litigate any such claim that Christine made.

Christine then retained Phoenix counsel and obtained a dismissal with prejudice of the Terson suit on the grounds that she had not signed the lease, and the statute of frauds barred the claim against her. Although Christine submitted bills for more than $8,000 in her fee application to the trial court, the trial court awarded Christine attorney's fees and costs of $2,000. Christine then filed a bar complaint against respondent on August 15, 1989. She alleged that respondent had never contacted her, had failed to learn of her relevant defenses, had no authority to represent her in the Terson lawsuit, and had a conflict of interest when he represented Frank in the OSC proceedings. Finding probable cause, the State Bar issued a formal complaint on July 17, 1990.

## II. Proceedings Before the State Bar

Respondent's answer to the bar contended that, because Frank had reported the tender of defense by Christine, respondent owed no ethical duty to Christine at all. Attached to his response were what Fioramonti described as copies of notes from his office files from November 4, 1985. These notes, styled so that they appeared to have been created during the November 4 meeting with Frank, supported respondent's contention that Frank had told him that Christine had signed the lease and had tendered her defense to Frank. Respondent quoted from these notes in his re-

sponse and highlighted relevant portions to support his answer.

At his deposition on November 21, 1990, respondent again referred to the notes as "notes from my file from what is the initial office conference I had with [Frank]." Bar counsel did not ask, and respondent did not tell, when the office notes had actually been created. However, on February 7, 1991, bar counsel informed respondent that he wished to have the notes date tested to determine exactly when they were created. At that time, respondent and bar counsel discussed what types of sanctions might be visited upon respondent if he had indeed created false evidence during a bar proceeding. Believing that the test results would be inconclusive, respondent stipulated to the test, which was inconclusive.

That same February, respondent prepared and sent to attorney Barassi a proposed affidavit stating that Barassi and Curl had had exclusive possession of the Terson file from April 1987 to November 1990, and that Barassi had seen respondent come to the firm in October 1989 and copy from the file two pages of handwritten notes. Barassi signed the proposed affidavit and returned it to respondent. Respondent knew, of course, that the affidavit was false because he did not create the notes until after the State Bar complaint was filed.

Respondent used the signed Barassi affidavit in an attempt to get affidavits from attorneys Curl and Cromwell, both of whom had been with the Barassi firm. He asked them to sign affidavits stating that they had seen the handwritten notes in the file at the Barassi firm after Frank had transferred the file to the firm. Such an affidavit, along with the Barassi affidavit, would have, in respondent's own words, "end[ed] the implication of the bar that those notes were fabricated by [respondent] to defend this bar action because the bar action was not filed until 1989, more than two years after the file was given to [Barassi and Burris]." In his letter to attorney Cromwell dated February 18, 1991, respondent enclosed the Barassi affidavit and a copy of the notes and asked her to

sign an affidavit stating that she remembered seeing the notes in the file. He told Cromwell that,

> [a]s you might already appreciate, the innuendo that I would falsify evidence during a bar investigation carries a far greater potential sanction against me than the original allegations themselves, so I am most anxious to "close the door" on such allegations as conclusively as possible.

Neither Cromwell nor Curl would sign the proposed affidavits, informing respondent that they could not remember whether the notes had been in the file.

In March 1991, bar counsel informed respondent that the bar wished to perform additional tests on the notes to determine their age. Respondent objected, stating that the tests were untimely and irrelevant. He maintained that position even after he had satisfied himself that the tests might again be inconclusive. The hearing committee granted the State Bar's request for additional testing on April 4, 1991. That same day, respondent met with his recently retained counsel, Larry Deckter, and Deckter sent a fax to bar counsel's office stating that testing would not be necessary because respondent would be making a Rule 8.1 disclosure.

In a disclosure statement filed the next day, respondent contended that bar counsel was under a "misapprehension of fact" as to when the notes were created. Respondent asserted that he had never stated that the notes were created in 1985. He admitted that the notes had been created in 1989 and claimed that the State Bar had jumped to the conclusion that he had represented that the notes were created in 1985. Following this disclosure, the State Bar amended its complaint, adding an allegation that respondent had violated ER 8.1 and 8.4 by submitting false evidence in a bar proceeding and by engaging in conduct prejudicial to the administration of justice.

Before the hearing committee, respondent admitted that he had created the notes in 1989, but stated that he did not disclose that fact because bar counsel never asked the right question. He testified that he did

not intend to mislead the bar, but could see how someone might have believed that the notes had been created in 1985 based on things that he had said and the physical appearance of the notes. Respondent stated that he knew soliciting false affidavits was wrong, he knew at the time he did it that the affidavits were untrue, and he deeply regretted soliciting them. He also claimed, however, that he never intended to use the affidavits, because he realized that using them was wrong. He contended that he had not named Barassi as a potential witness, showing that he never intended to use the Barassi affidavit in evidence. Bar counsel argued that the Barassi affidavit was not used only because respondent failed to obtain the other false affidavits, which were necessary to complete the story.

The hearing committee found that respondent's conduct in the Terson matter violated ER 1.1 (competence), 1.2 (representation), and 1.4 (communication). It also found that respondent had submitted false evidence in a bar proceeding and had attempted to mislead the State Bar about the false evidence in violation of ER 8.1 and 8.4. The hearing committee found no violation of ER 1.7 (conflict of interest) in respondent's representation of Frank in the OSC. Although acknowledging that the conduct in the Terson matter itself would not warrant suspension, two committee members recommended that respondent be disbarred because of his conduct in the bar investigation. The third member favored suspension, rather than disbarment. On review, the disciplinary commission unanimously adopted the hearing committee's findings of fact and conclusions of law. A majority of five members recommended a three-year suspension; four members recommended disbarment.

## ISSUES PRESENTED FOR REVIEW

1. Whether the disciplinary commission erred in not remanding the case to the hearing committee to supplement the record with additional mitigating evidence or, in the alternative, whether this court

should permit supplementation of the record.

2. Whether the respondent should be required to pay restitution to Christine for the amount of fees she spent in defending the cross-claim.

3. Whether the disciplinary commission's recommendation of a three year suspension is appropriate in light of the facts of this case and relevant American Bar Association Standards for Imposing Lawyer Sanctions.

## DISCUSSION

### I. Whether the record should be supplemented

■ Present counsel for respondent entered the case after the hearing committee's recommendation of disbarment. At the commission level, counsel argued that the matter should be remanded to the committee to take additional evidence concerning respondent's character and reputation in the community. Alternatively, respondent sought to supplement the record at the commission level with affidavits. The commission denied the motion to remand and the motion to supplement, and respondent renews his request here.

Normally, "[e]vidence not presented to the committee shall not be presented to the commission." Ariz.R.Sup.Ct. 53(d)(1). This rule does not, however, "absolutely preclude[ ] State Bar counsel or a respondent from offering to the Commission evidence not presented to the committee where it properly falls into the category of newly discovered evidence." *In re Fresquez*, 162 Ariz. 328, 332, 783 P.2d 774, 778 (1989). Nonetheless, we do not believe either remand or supplementation is appropriate in this case.

Respondent knew that his character was in issue well in advance of the committee hearing. He had adequate time to gather mitigating character evidence. He did present some mitigating evidence, but not as much as present counsel would prefer. Although "substance must dominate over form" in bar proceedings, *In re Rivkind*, 164 Ariz. 154, 161 n. 4, 791 P.2d 1037, 1044

n. 4 (1990), the evidence at issue is not newly discovered, nor is it offered to correct an erroneous finding of the commission. Matters of strategy do not justify delaying proceedings to relitigate what has already been concluded or to allow counsel to place evidence into the record after the appropriate time has passed. The commission did not err in refusing respondent's request to remand or supplement.

### II. Whether Respondent Should Pay Restitution

■ Neither the hearing committee nor the disciplinary commission recommended that respondent pay restitution to Christine. Respondent argues, therefore, that this court lacks jurisdiction to review the restitution issue. We disagree. Respondent cites Ariz.R.Sup.Ct. 53(d)(3), but that rule does not defeat our jurisdiction in this case. The rule states:

> The decision of the commission shall be final as to dismissal, remand, probation and reprimand, a censure that is not appealed, or if not part of a sanction imposable only by the court, restitution and assessment.

Because restitution here would only be imposed as part of a suspension or disbarment order, the decision of the commission on restitution lacks finality. *Cf.* Ariz. R.Sup.Ct. 53(e)(1) (stating that no suspension or disbarment is final until judgment is entered by the clerk of the Supreme Court). We therefore have jurisdiction to consider whether the respondent should pay restitution.

We do not, however, agree with the State Bar that the respondent should be ordered to pay restitution. The hearing committee and the disciplinary commission both found that the evidence was insufficient to show that Christine suffered a financial loss as a result of respondent's actions. Having reviewed the record, we adopt their factual determination.

### III. The Sanction

■ Neither party disputes the findings of fact and conclusions of law reached

by the hearing committee and accepted by the commission. Although this court is the ultimate trier of fact and law in disciplinary proceedings, we give serious consideration to the committee's and commission's reports and recommendations. *In re Gaynes*, 168 Ariz. 574, 576, 816 P.2d 231, 233 (1991). We will impose discipline, however, only if clear and convincing evidence supports the committee's findings. *Id.* After reviewing the record, we agree with the findings of misconduct in this case. We therefore consider the appropriate sanction.

Respondent contends that the commission's sanction of a three-year suspension is too harsh, while the State Bar contends that it is too lenient. In the final analysis, we have decided to accept the recommendation of the majority of the commission. We agree with the dissent that respondent's conduct, standing alone, is sufficiently grievous to merit disbarment. *See Fresquez*, 162 Ariz. at 335, 783 P.2d at 781. However, in this case, there is very substantial mitigating evidence. That mitigation is that respondent has practiced law since 1976 with no prior disciplinary problems and enjoys a good reputation in his community.

■ The purpose of lawyer discipline is not to punish the lawyer, but to protect the public and deter similar conduct by other lawyers. *Rivkind*, 164 Ariz. at 157, 791 P.2d at 1040. "Consequently, in determining the appropriate sanction to be imposed, we should focus on such considerations as the maintenance of the integrity of the profession in the eyes of the public, the protection of the public from unethical or incompetent lawyers, and the deterrence of other lawyers from engaging in unprofessional conduct." *In re Murray*, 159 Ariz. 280, 282, 767 P.2d 1, 3 (1988). When imposing discipline, it is appropriate to examine sanctions imposed in factually similar cases and to consider the American Bar Association Standards (ABA Standards) for Imposing Lawyer Discipline. *In re Pappas*, 159 Ariz. 516, 526, 768 P.2d 1161, 1171 (1988).

## A. The ABA Standards as Applied to the Facts of This Case

■ As in all discipline cases, the sanction we impose is based on the facts of the individual case. *In re Wolfram*, 174 Ariz. 49, 847 P.2d 94 (1993). We look to the ABA Standards as a guide in imposing the proper sanction. ABA Standard 3.0 counsels us to look to: a) the duty violated; b) the lawyer's mental state; c) the actual or potential injury caused by the lawyer's misconduct; and d) the existence of aggravating or mitigating factors. *See also Gaynes*, 168 Ariz. at 576, 816 P.2d at 233.

■ We agree with the committee and commission that respondent's conduct in the Terson lawsuit standing alone would not subject respondent to suspension. *See* Standards 4.42, 4.52, 4.62 (stating that suspension is appropriate only when the lawyer knowingly fails to act diligently, act competently, or communicate with his client). The original ethical breaches were, as the committee stated, ones of negligence and oversight. It is respondent's conduct that occurred during the bar investigation that subjects respondent to severe sanctions.

Respondent manufactured evidence. He committed perjury at his deposition. He suborned perjury when he obtained and attempted to obtain false affidavits from three other attorneys. In discussing a lawyer's duty to the public, the standards state:

The most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community relies. The public expects the lawyer to be honest and to abide by the law....

ABA Standard 5.0. In discussing the lawyer's duty to the legal profession, the standards state:

Lawyers are [also] officers of the court, and the public expects lawyers to abide by the legal rules of substance and procedure which affect the administration of justice. Lawyers must always operate within the bounds of the law, and cannot

create or use false evidence or make a false statement of material fact.

ABA Standard 6.0. In manufacturing evidence, perjuring himself, and suborning perjury, respondent violated his duty to the public as well as the legal system. *See* ABA Standards 5.0 and 6.0.

As stated by the hearing committee, respondent's mental state in violating these duties was one of deception and self protection at all costs. We concur in this finding. By his own words, respondent was clearly aware of the potential consequence of fabricating evidence. In his letter to Cromwell soliciting the false affidavit, respondent stated:

> Please contact me upon your receipt of this letter and let me know if you are able to provide the affidavit I requested. As you might already appreciate, the innuendo that I would falsify evidence during a bar investigation carries a far greater potential sanction against me than the original allegations themselves, so I am most anxious to "close the door" on such allegations as conclusively as possible.

Respondent knew that his conduct was wrong and attempted to include others in his wrongdoing. His eventual admission that he created the notes in 1989 does not alter the fact that he never admitted to attempting to mislead the bar.

Two different standards for imposing sanctions apply to the respondent's conduct. The first is Standard 5.11(b), which states that

Disbarment is generally appropriate when:

> (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

Standard 6.11 also applies. It states:

Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

The hearing committee found that respondent attempted to deceive the State Bar by creating the false notes and then further attempted to deceive the committee by refusing to admit the original deception. The sanctions suggested by Standards 5.11(b) and 6.11, however, are only recommendations, and imposing the appropriate sanction in a given case requires that we also consider aggravating or mitigating factors. *See* ABA Standard 5.1 and 6.1.

**B. Aggravation, Mitigation, and Proportionality**

Under ABA Standards 9.2 and 9.3, we may consider several aggravating and mitigating factors in determining what sanction to impose. *See also Pappas,* 159 Ariz. at 527, 768 P.2d at 1172. The committee found the following aggravating circumstances: 1) a pattern of misconduct; 2) submission of false evidence and false statements during the disciplinary process; 3) refusal to fully acknowledge the wrongful nature of his conduct; and 4) substantial experience in the practice of law. *See* ABA Standard 9.22. The committee found only one mitigating factor—the absence of a prior disciplinary record. *See* ABA Standard 9.32. We concur, but we find one additional mitigating factor. The uncontroverted evidence shows that respondent enjoys a good reputation in the Tucson community, where he has practiced law for many years. *See* ABA Standard 9.32(g). We therefore find respondent's reputation a mitigating factor, in addition to his lack of any prior disciplinary record.

Based on the ABA guidelines and the various aggravating factors, we disagree with the respondent's suggestion that a short suspension would be sufficient in this case. Respondent has shown himself willing to lie and deceive to accomplish his personal goals, without regard to the consequences to others. To deter others who may be so inclined, we must send a strong message to the bar and the public that this

type of behavior will not be dealt with lightly.

On the other hand, we feel that permanent disbarment is too harsh. Although the standards previously discussed would often warrant disbarment for the type of activity involved in this case, we do not feel that disbarment best serves the purposes of lawyer discipline on the precise facts before us.

> The purpose of lawyer discipline ... is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, *or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.*

ABA standard 1.1 (emphasis added).

That the acts in this case all took place during one series of events, and that the respondent enjoys a good reputation and has practiced for a long period of time with no prior disciplinary record, suggests that although egregious, respondent's acts appear to be the aberrational result of panic. If given a second chance, we believe it is likely that respondent will be able properly to discharge his professional duties to his clients, as he has in the past. We therefore conclude that the disciplinary commission's recommended suspension of three years is appropriate in this case. We also conclude, contrary to both parties' contentions, that such a sanction is proportional to those we have imposed in other cases.

## CONCLUSION

Given respondent's conduct, and considering the aggravating and mitigating circumstances, we conclude that a three-year suspension is appropriate and proportional. The respondent is hereby suspended from the practice of law for a period of three years beginning 60 days from the date that this opinion is filed. Costs of $10,516.31 in favor of the State Bar are assessed against respondent, and judgment shall be entered accordingly.

ZLAKET, J., concurs.

CORCORAN, Justice, dissenting:

I respectfully dissent. Although I agree with the majority's characterization of respondent's misconduct, I do not agree that a 3-year suspension from the practice of law is an adequate sanction. Rather, I find that the egregiousness of respondent's misconduct, coupled with this court's decision in *In re Fresquez,* mandates disbarment.

The misconduct at issue in *Fresquez* was strikingly similar to respondent's misconduct in this case. *See In re Fresquez,* 162 Ariz. 328, 783 P.2d 774 (1989). In response to a bar complaint, respondent Fresquez sought and obtained his secretary's signature on an affidavit that contained false representations. *Fresquez,* 162 Ariz. at 330, 783 P.2d at 776. Knowing that these representations were false, Fresquez submitted the affidavit along with his answer to the State Bar. *Fresquez,* 162 Ariz. at 333, 783 P.2d at 779. Additionally, while under oath, Fresquez repeatedly lied to the State Bar hearing committee. *Fresquez,* 162 Ariz. at 335, 783 P.2d at 781. Upon disbarring Fresquez, this court found that notwithstanding any other misconduct, Fresquez's misconduct relating to the false affidavit "standing alone, [was] sufficient to warrant [Fresquez's] disbarment." *Fresquez,* 162 Ariz. at 335, 783 P.2d at 781. Moreover, with regard to Fresquez's lies under oath, we commented that "[i]t is difficult to conceive of an ethical violation more serious than a lawyer lying under oath." *Fresquez,* 162 Ariz. at 335, 783 P.2d at 781.

I find no reason to depart from our position in *Fresquez.* Respondent's misconduct in manufacturing evidence, lying under oath at his deposition, and suborning perjury by means of false affidavits falls within the bounds of the *Fresquez* decision. Respondent's misconduct warrants disbarment under the American Bar Association's *Standards for Imposing Lawyer Sanctions. See Standards* 5.11(b) and 6.11 (1991). Indeed, the majority concedes as much, acknowledging that "respondent's conduct, standing alone, is sufficiently grievous to merit disbarment." Neverthe-

less, it finds that respondent's permanent disbarment would be an inappropriate and unnecessarily harsh sanction. In weighing the aggravating and mitigating factors of this case, the majority apparently finds that the mitigating factors of respondent's good reputation in the Tucson community and absence of a prior disciplinary record provide a sufficiently compelling case against respondent's disbarment. Considering the egregiousness of respondent's misconduct, I do not agree.