The PEOPLE of the State of Colorado, Complainant,

Jesus Roberto ROMO–VEJAR, Respondent.

No. 05PDJ057.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

March 31, 2006.

Attorney Regulation. Following a sanctions hearing, a Hearing Board publicly censured Respondent Jesus Roberto Romo–Vejar (Attorney Registration No. 17350) in this reciprocal discipline case. C.R.C.P. 251.21(d)(4) requires that a Hearing Board impose the same discipline imposed by a foreign jurisdiction unless the misconduct warrants a substantially different form of discipline. The Supreme Court of Arizona issued Respondent a public censure and placed him on probation for a period of one

year. Respondent acknowledged in the Arizona proceedings that he negligently dealt with client funds when he failed to maintain client funds in his trust account. Respondent also failed to notify the State of Colorado of the discipline imposed by the Supreme Court of Arizona due to his mistaken belief that a past administrative suspension meant he no longer held a law license in the State of Colorado. The Hearing Board concluded that the People did not meet their burden of showing the misconduct warranted a substantially different form of discipline in the State of Colorado.

## REPORT, DECISION, AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.21(d)

On January 30, 2006, a Hearing Board comprised of J.D. SNODGRASS, BOSTON H. STANTON, JR., both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a hearing on the issue of sanctions in this reciprocal discipline matter pursuant to C.R.C.P. 251.21(d). APRIL M. SEEKAMP and NANCY L. COHEN appeared on behalf of the Office of Attorney Regulation Counsel ("the People") and JESUS ROBERTO ROMO–VEJAR ("Respondent") appeared *pro se*. The Hearing Board issues this Report, Decision, and Order Imposing Sanctions Pursuant to C.R.C.P. 251.21(d) based on the pleadings, evidence, and arguments presented by the parties.

## SANCTION IMPOSED: PUBLIC CENSURE[1]

### I. *ISSUE*

■ C.R.C.P. 251.21(d)(4) provides that a Hearing Board shall impose the same discipline imposed by a foreign jurisdiction unless the misconduct warrants a substantially different form of discipline. The Supreme Court of Arizona publicly censured Respondent and imposed a one-year period of proba-

tion after he admitted to negligently dealing with client funds. Should this Hearing Board impose a six-month suspension, stayed upon the successful completion of a one-year period of probation, as requested by the People?

## II. *PROCEDURAL HISTORY AND BACKGROUND*

On July 20, 2005, the People filed a complaint pursuant to C.R.C.P. 251.21(d) in this reciprocal discipline matter. The People filed an amended complaint on August 3, 2005. The amended complaint notified Respondent that the People intended to seek a greater sanction than the discipline imposed by the Supreme Court of Arizona. Respondent filed his answer on September 26, 2005.[2]

On December 1, 2005, the People filed a motion for judgment on the pleadings and Respondent filed a response on January 4, 2006. On January 19, 2006, the PDJ found no dispute as to the material facts in this case and granted the People's motion. The entry of judgment on the pleadings established Respondent's violation of Colo. RPC 1.15(a) and C.R.C.P. 251.21(b) for purposes of reciprocal discipline in Colorado. The PDJ set the case for a hearing on the issue of sanctions pursuant to C.R.C.P. 251.21(d) to be held January 30, 2006.

The issue before the Hearing Board is whether Respondent's misconduct warrants a substantially different form of discipline in the State of Colorado than the discipline imposed by the Supreme Court of Arizona. The People seek a six-month suspension, stayed upon the successful completion of one year of probation. Respondent seeks the imposition of reciprocal discipline. A brief summary of the established facts is set forth below.

---

1. The Supreme Court of Arizona publicly censured Respondent and imposed a one-year period of probation. C.R.C.P. 251.7(a)(3) requires the imposition of a stayed sentence in conjunction with probation. Respondent's Exhibit A shows he successfully completed his one-year period of probation in the State of Arizona. The Hearing Board therefore forgoes the requirement of a one-year period of probation in this reciprocal discipline case.

2. The People's Amended Complaint and Exhibits and Respondent's Answer and Exhibits are attached to this Report as Exhibits A and B respectively.

### III. *FACTS AND RULE VIOLATIONS*

C.R.C.P. 251.21(a) provides that a final adjudication imposed in another jurisdiction conclusively establishes misconduct for purposes of reciprocal discipline in the State of Colorado. The Hearing Board incorporates into this Report the following rule violations and facts established by the PDJ's entry of judgment on the pleadings to determine whether Respondent's misconduct warrants a substantially different form of discipline.

Respondent, Attorney Registration Number 17350, took and subscribed the oath of admission in Colorado and gained admission to the Bar of the Colorado Supreme Court on April 8, 1988. He is therefore subject to the jurisdiction of this court in these disciplinary proceedings. C.R.C.P. 251.1(b). The Colorado Supreme Court previously administratively suspended Respondent in 1992 for failing to fulfill mandatory continuing legal education requirements. In this case, Respondent admitted he failed to notify the People of the discipline imposed by the Supreme Court of Arizona due to his mistaken belief that the administrative suspension meant he no longer held a law license in the State of Colorado. The People highlighted Respondent's admission as a part of their argument for greater discipline in this matter. The remainder of Respondent's misconduct occurred in the State of Arizona.

Respondent deposited a $50,000.00 settlement check into his trust account in November 2001 as an attorney in the State of Arizona. Respondent deducted his fee, held $15,000.00 to satisfy a worker's compensation lien, and issued a check to his client for $18,350.00. Respondent initially attempted to negotiate the lien for his client, but subsequently failed to pursue payment of the lien. In the meantime, Respondent transferred portions of the lien funds to his operating account, used portions of the funds to repay another client, and failed to maintain the $15,000.00 in his trust account. The insurance company attempted to contact Respondent without success. Respondent's client suffered the potential harm of having to pay the outstanding lien during this period of time. However, Respondent immediately sent funds to the insurance company for full payment of the lien after the State Bar of Arizona contacted him in April 2003.

Respondent's misconduct has been established in proceedings before the Supreme Court of Arizona and the PDJ. The only remaining issue in this case is whether the People met their burden to show that Respondent's misconduct in the State of Arizona warrants a substantially different form of discipline in the State of Colorado.

### IV. *SANCTIONS*

The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA *Standards*"), the Colorado Rules of Civil Procedure, and Colorado Supreme Court case law are the guiding authorities for imposing reciprocal discipline in the State of Colorado. "Reciprocal discipline is the imposition of a disciplinary sanction for conduct for which a lawyer has been disciplined in another jurisdiction." ABA *Standard* 2.9.

The Supreme Court of Arizona publicly censured Respondent and imposed a one-year period of probation after he admitted to negligently dealing with client funds. The People seek a six-month suspension, stayed upon the successful completion of one year of probation and Respondent seeks the imposition of reciprocal discipline. C.R.C.P. 251.21(d) provides that the Hearing Board shall issue a decision imposing the same discipline imposed by the foreign jurisdiction unless the Hearing Board determines that *the misconduct proved warrants that a substantially different form of discipline be imposed by the Hearing Board.* C.R.C.P. 251.21(d)(4)(emphasis added).

The People notified Respondent that they intended to seek a sanction "greater" than the sanction imposed by the Supreme Court of Arizona. The Hearing Board recognizes the People seek a *greater* sanction, but questions in the first instance whether it is in fact a *substantially different* form of discipline than the discipline imposed by the Supreme Court of Arizona as required by C.R.C.P. 251.21(d). Nevertheless, the Hearing Board must decide whether Respondent's misconduct warrants a substantially different form

of discipline pursuant to C.R.C.P. 251.21(d)(4).

The Hearing Board gives great deference to the proceedings in the Supreme Court of Arizona. These extensive proceedings revealed that Respondent failed to adequately safeguard client funds in his trust account and failed to maintain his trust account in accordance with the Rules of Professional Conduct. The proceedings also found no evidence that indicated Respondent intended to misappropriate his client's funds, and instead the parties agreed that he negligently handled these funds. Finally, the Hearing Officer considered each of the factors outlined in ABA *Standard* 3.0 including the duties breached by Respondent, his mental state, the injury or potential injury he caused, and the aggravating and mitigating factors.

ABA *Standard* 4.1 clearly is the most applicable standard to Respondent's misconduct regarding his failure to preserve a client's property. Specifically, in the absence of aggravating or mitigating factors:

■ Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client. ABA *Standard* 4.12.

■ Reprimand (public censure) is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client. ABA *Standard* 4.13.

The Supreme Court of Arizona listed a series of mitigating factors that led it to the conclusion that the presumptive sanction for Respondent's misconduct is public censure. The factors included: (1) the lack of any prior discipline (ABA *Standard* 9.32(a)); (2) an absence of dishonest or selfish motive (ABA *Standard* 9.32(b)); (3) a good faith effort to make restitution/rectify the consequences of his misconduct (ABA *Standard* 9.32(d)); and (4) cooperation throughout the disciplinary proceedings in the State of Arizona (ABA *Standard* 9.32(e)). The Hearing Board also considered Respondent's substantial experience in the practice of law (over 17 years) as an aggravating factor and found Respondent remorseful for his misconduct

(ABA *Standard* 9.32(*l*)) as an additional mitigating factor.

The People argue that Colorado Supreme Court case law requires a sanction greater than public censure under these circumstances. A review of the cases cited by the People reveals distinguishable fact scenarios that in some instances involved multiple disciplinary violations with little or no mitigation and/or respondents who failed to participate in the proceedings. Further, none of these cases considered the appropriate sanction for negligent handling of client funds in the context of a reciprocal discipline case where the respondent already has been publicly censured in another jurisdiction.

■ Negligent handling of client funds warrants a public censure, at the least. *People v. Shidler,* 901 P.2d 477, 479 (Colo.1995); *See People v. Cantrell,* 900 P.2d 126, 128 (Colo.1995) (in the absence of aggravating or mitigating factors, public censure is appropriate when a lawyer is negligent in dealing with client funds and causes injury or potential injury to a client, citing ABA *Standard* 4.13). The Hearing Board acknowledges that a suspension *could be* considered given the established facts, absent the significant mitigating factors and the reciprocal discipline standard the Hearing Board must apply in this case.

■ The Hearing Board considered the findings of the Supreme Court of Arizona, the Colorado Supreme Court case law cited by the People, Respondent's failure to report his Arizona discipline in the State of Colorado, and the significant factors in mitigation and finds that the People did not meet their burden to show that Respondent's misconduct warrants a substantially different form of discipline as set forth in C.R.C.P. 251.24(d)(4). Under these circumstances, the Hearing Board finds no reason to deviate from the presumptive reciprocal discipline and is therefore required to issue an order imposing the same discipline as imposed by the Supreme Court of Arizona. C.R.C.P. 251.21(d).

## V. CONCLUSION

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The People did not meet their burden of showing Respondent's misconduct warrants a substantially different form of discipline in the State of Colorado. The established facts reveal Respondent's conduct involved negligence, involved only one client, and caused only potential harm to that client. The Hearing Board also considered the fact that Respondent has not practiced in the State of Colorado since before 1992, has no intention of practicing here, and remains administratively suspended at this time. The Hearing Board therefore concludes that the discipline ordered by the Supreme Court of Arizona is reciprocally appropriate under these circumstances. Accordingly, the Hearing Board finds that the imposition of a public censure is the appropriate sanction in this case.

## VI. ORDER

The Hearing Board therefore **ORDERS**:

1. Jesus Roberto Romo–Vejar, Attorney Registration Number 17350, is **PUBLICLY CENSURED.**

2. Jesus Roberto Romo–Vejar **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days in which to file a response.

## EXHIBIT A

ORIGINAL PROCEEDING IN DISCIPLINE BEFORE THE PRESIDING DISCIPLINARY JUDGE

SUPREME COURT, STATE OF COLORADO

600 17th Street, Suite 510-South

Denver, Colorado 80202

April M. Seekamp, #34194, Assistant Regulation Counsel, John S. Gleason, #15011, Regulation Counsel, Attorneys for Complainant, 600 17th Street, Suite 200-South, Denver, Colorado 80202.

COURT USE ONLY

Case Number: 05PDJ057

### AMENDED COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.21 and it is alleged as follows:

### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on April 8, 1988, and is registered upon the official records of this court, registration number 17350. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent was administratively suspended in 1992. The respondent remains administratively suspended. The respondent's registered business address is 177 N. Church Ave. Ste. 200, Tucson, Arizona 85701.

### General Allegations

2. On November 18, 2004, the Supreme Court of Arizona entered its Judgment and Order censuring the respondent, and placing the respondent on probation for one year with conditions. A copy of the Arizona Supreme Court's Judgment and Order is attached hereto as *Exhibit A.*[1] A copy of the Hearing Officer's Report is attached hereto as *Exhibit B.* A copy of the Disciplinary Commission's Report is attached hereto as *Exhibit C.*

3. The parties in the Arizona case submitted a Tender of Admissions and Agreement for Discipline by Consent to the Hearing Officer. The Hearing Officer recommended acceptance of the Tender of Admissions and Agreement for Discipline by Consent and the Joint Memorandum in Support of Agreement for Discipline by Consent to the Disciplinary Commission.

4. The Disciplinary Commission recommended adopting and incorporating the Hearing Officer's findings of fact, conclusions

---

1. A certified copy of the Arizona Supreme Court's Judgment and Order is attached to the original complaint filed with the Court on July 20, 2005.

of law, and recommendation for censure, one year of probation and costs, to the Arizona Supreme Court.

5. The Arizona Supreme Court imposed the discipline recommended by the Disciplinary Commission.

6. The respondent did not notify the Office of Attorney Regulation Counsel ("OARC") that he had been censured and placed on probation, as required by Rule 251.21(b). However, OARC learned of the respondent's discipline from the Arizona State Bar.

7. As is evident from the Arizona Supreme Court's Order, the Disciplinary Commission's Report and the Hearing Officer's Report, the procedure followed by the Arizona State Bar and the court comported with the requirements of due process.

8. This Court's proceedings involving the respondent can appropriately be based upon the proceedings held in Arizona.

### CLAIM I

[Reciprocal Discipline—C.R.C.P. 251.21(d) ]

9. Paragraphs 2 through 8 are incorporated herein as if fully set forth are incorporated herein.

10. C.R.C.P. 251.21(d). provides: "Upon receiving notice that an attorney subject to these Rules has been publicly disciplined in another jurisdiction, the Regulation Counsel shall obtain the disciplinary order and prepare and file a complaint against the attorney as provided in C.R.C.P. 251.14."

11. The respondent was suspended in Arizona for violating ethical rules regarding his handling of settlement funds on behalf of a client. The respondent stipulated in the Arizona disciplinary matter that through his conduct, he failed to safe-keep the property of a client or third party, by failing to hold lien monies in the trust account during a 14–month period in which the funds were entrusted to him, and by utilizing a portion of the funds to pay another client, resulting in misappropriation of the funds; the respondent failed to keep his funds separate from that of client or third party funds by remov-

ing portions of the lien monies from his trust account into his operating account, and by placing personal monies into the trust account to cover the check for the lien; the respondent failed to record transactions to the trust account properly; the respondent failed to only disburse from his account with pre-numbered checks; and the respondent failed to consistently conduct a monthly reconciliation of his trust account.

12. The respondent's conduct in negligently mishandling client funds, as described in the attached exhibits, was misconduct that, according to precedent in Colorado, results in violations of Colo. RPC 1.15 and warrants greater discipline than a public censure and probation with conditions.

13. The respondent is thus notified that the sanction sought in this Colorado proceeding will be greater than that imposed in Arizona, pursuant to the authority conveyed by C.R.C.P. 251.21.

14. A hearing board should decide whether the sanction should be greater than a public censure with probation.

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5 and 251.21, and the Colorado Rules of Professional Conduct and that he be appropriately disciplined and assessed the costs of these proceedings.

### COMPLAINANTS EXHIBIT A

SUPREME COURT OF ARIZONA

IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA

JESUS R. ROMO VEJAR, Bar No. 011307, RESPONDENT.

Supreme Court No. SB-04-0145-D

Disciplinary Commission No. 03-0642

### JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no discretionary review occurring,

IT IS ORDERED, ADJUDGED AND DECREED that JESUS R. ROMO VEJAR, a member of the State Bar of Arizona, is hereby censured for conduct in violation of his duties and obligations as a lawyer, as disclosed in the Disciplinary Commission Report.

IT IS FURTHER ORDERED that JESUS R. ROMO VEJAR shall be placed on probation for a period of one (1) year effective upon the signing of the probation contract. The terms of probation are as follows:

1) Respondent shall contact the director of the State Bar's Law Office Management Program (LOMAP) within thirty (30) days of the date of the final judgment and order. Respondent shall submit to a LOMAP audit of his office's trust account procedures and calendaring procedures. The director of LOMAP shall develop a probation contract, and its terms shall be incorporated herein by reference.

2) Respondent shall refrain from engaging in any conduct that would violate the Rules of Professional Conduct or other rules of the Supreme Court of Arizona.

3) In the event that Respondent fails to comply with any of the foregoing conditions, and the State Bar receives information, bar counsel shall file with the Hearing Officer a Notice of Non–Compliance, pursuant to Rule 60(a)5, Ariz. R.S.Ct. The Hearing Officer shall conduct a hearing within thirty days after receipt of said notice, to determine whether the terms of probation have been violated and if an additional sanction should be imposed. In the event there is an allegation that any of these terms have been violated, the burden of proof shall be on the State Bar of Arizona to prove non-compliance by clear and convincing evidence.

IT IS FURTHER ORDERED that pursuant to Rule 60(b), the State Bar of Arizona is granted judgment against JESUS R. ROMO VEJAR for costs and expenses of these proceedings in the amount of $748.75, together with interest at the legal rate from the date of this judgment.

## COMPLAINANTS EXHIBIT B

### HEARING OFFICER'S REPORT

#### PROCEDURAL HISTORY

A Probable Cause Order was filed on February 26, 2004. The State Bar filed a Complaint on April 30, 2004. The parties filed a Tender of Admissions and Agreement for Discipline by Consent and a Joint Memorandum in Support of Agreement for Discipline by Consent on May 20, 2004. No hearing has been held.

### FINDINGS OF FACT

1. At all times relevant hereto, Respondent was an attorney licensed to practice law in the State of Arizona, having been admitted to practice in Arizona on May 9, 1987.

2. Respondent represented Jose Garcia Dominguez in connection with a work-related injury that occurred on December 12, 1998.

3. There was a worker's compensation lien in the amount of $15,806.75 against any recovery.

4. In or about November of 2001, the parties reached a settlement agreement in the amount of $50,000.

5. Respondent deposited the $50,000 settlement check into his trust account on or about November 20, 2001.

6. Pursuant to the fee agreement, Respondent was due a one-third fee from the settlement, in the amount of $16,650. Respondent withheld $15,000 in order to satisfy the worker's compensation lien, and then issued a check to Mr. Dominguez for the remainder, in the amount of $18,350.

7. Respondent initially left the $15,000 for the lien in his trust account. Respondent informed Mr. Dominguez that he would attempt to negotiate a settlement of the lien amount.

8. Thereafter, Respondent made a few phone calls to the worker's compensation insurance office, and eventually to the insurance attorney regarding the lien.

9. Respondent did not thereafter diligently pursue the payment of the worker's compensation lien on behalf of Mr. Dominguez.

10. In or about January and March of 2003, the insurance company's attorney wrote letters to Respondent's office in an attempt to ascertain the status of the lien monies. Respondent did not respond to these contacts. Respondent asserts that the letters were sent to his previous address, and that he did not receive them.

11. By letter dated April 3, 2003, attorney Terrence Kurth, who represents the insurance company, submitted a bar charge relating to Respondent's failure to timely pay the lien.

12. Upon receiving the charge, Respondent immediately sent checks to Mr. Kurth in the amount of $15,806.75, as payment of the lien in full.

13. Respondent was asked to provide trust account records to establish that the lien monies had been held in trust from the time of the initial deposit until the disbursement to Mr. Kurth.

14. Respondent provided the requested trust account records.

15. The records revealed that the lien monies were not consistently held in the trust account during the time period in question.

16. A subsequent review of Respondent's trust account records, along with Respondent's responses, revealed that Respondent:

a. Failed to safe-keep the property of a client or third party. The records indicate that, at times during the 14-month period in question, the lien monies were not in the trust account. On various occasions during the time period, portions of the lien funds were transferred to Respondent's operating account. The records further indicate that a portion of the funds was utilized to repay another client. These transactions resulted in misappropriation of the third party funds.

b. Failed to keep his funds separate from that of client or third party funds. Respondent removed portions of the lien monies from his trust account into his operating account, and also placed earned and personal monies into his trust account to cover the check for the worker's compensation lien.

c. Failed to record all transactions to the trust account properly and completely by failing to update the client ledger cards. Specifically, the ledger card relating to Mr. Dominguez was not complete.

d. Failed to only disburse from his trust account with pre-numbered checks. Respondent's bank records indicate that he, at times during the time period in question, withdrew or transferred funds by telephone.

e. Failed to consistently conduct a monthly reconciliation of his trust account.

17. Respondent asserts that the trust account violations listed above were the result of negligence, and not intentional wrongdoing. Respondent admits that he relied on memory rather than referring to records in many of the transactions resulting in many errors. For purposes of this agreement, the State Bar does not dispute these assertions. Respondent further states that he has changed his office procedures to prevent similar violations, and has enrolled in CLE classes regarding proper trust accounting procedures.

### CONDITIONAL ADMISSIONS

Respondent, in exchange for the stated form of discipline, conditionally admits that his conduct, as set forth herein, violated the following Rules of Professional Conduct and Rules of the Supreme Court: Rule 42, specifically ERs 1.3 and 1.15, Rule 43 and Rule 44, Ariz. R.S.Ct.

### ABA STANDARDS

The ABA *Standards* list the following factors to consider in imposing the appropriate sanction: (1) the duty violated, (2) the lawyer's mental state, (3) the actual or potential injury caused by the lawyer's misconduct,

and (4) the existence of aggravating or mitigating circumstances. ABA *Standard* 3.0.

The *Standards* are designed to promote consistency in the imposition of sanctions by identifying relevant factors that courts should consider and then applying these factors to situations where lawyers have engaged in various types of misconduct. *Standards* 1.3, Commentary. The *Standards* provide guidance with respect to an appropriate sanction in this matter. The court and commission consider the *Standards* a suitable guideline. *In re Rivkind*, 164 Ariz. 154, 157, 791 P.2d 1037, 1040 (1990); *In re Kaplan*, 179 Ariz. 175, 177, 877 P.2d 274, 276 (1994).

Given the conduct in this matter, the most applicable Standard is 4.1 regarding failure to preserve the client's property. Specifically, Standard 4.13 provides: "[Censure] is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client."

In this matter, Respondent has asserted, and the State Bar has agreed to accept, that his misconduct with his trust account was negligent. Respondent acknowledges that Mr. Dominguez suffered at least potential harm by the negligent misappropriation of the lien monies in that he could have been held liable for the lien payment during the time period in question. However, as set forth in the Tender, the lien has now been paid in full.

### AGGRAVATING AND MITIGATING FACTORS

This Hearing Officer then considered aggravating and mitigating factors in this case, pursuant to *Standards* 9.22 and 9.32, respectively. This Hearing Officer agrees with the parties that one aggravating factor applies and should be considered in this matter: (i)—substantial experience in the practice of law: Respondent has been a lawyer in Arizona for over 17 years.

This Hearing Officer agrees with the parties that four factors are present in mitigation: (a)—absence of a prior disciplinary record: Respondent has no prior discipline with the State Bar. (b) absence of a dishonest or selfish motive—Respondent's conduct was negligent. There is no evidence indicating that he intended to misappropriate his client's funds. (d) timely good faith effort to make restitution or to rectify consequences of misconduct—Upon receiving the charge from the State Bar of Arizona, Respondent promptly paid the full amount due to the third party lien holder. Respondent contends that the bar charge was the first he realized that the lien had not been timely paid. (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings—Respondent was forthcoming and cooperative throughout the investigative stage of these proceedings and continued to be cooperative after the filing of a formal complaint. In addition, Respondent timely provided all trust account records requested during the investigation.

### PROPORTIONALITY REVIEW

To have an effective system of professional sanctions, there must be internal consistency, and it is appropriate to examine sanctions imposed in cases that are factually similar. *In re Shannon*, 179 Ariz. 52, 71, 876 P.2d 548, 567 (1994) (quoting *In re Wines*, 135 Ariz. 203, 207, [660 P.2d 454](1983)). However, the discipline in each case must be tailored to the individual case, as neither perfection nor absolute uniformity can be achieved. *Matter of Riley*, 142 Ariz. 604, 615, 691 P.2d 695 (1984).

In terms of proportionality, the following cases are instructive: In *Matter of Vingelli*, SB–03–0161–D (January 13, 2004), Mr. Vingelli represented a client, who at the time was a minor, in a personal injury matter. After the matter settled, Mr. Vingelli agreed to contest the claim by the parents' insurer for reimbursement. Mr. Vingelli notified the insurer that the client was contesting the claim and that the disputed money would be held in his client trust account until the matter was resolved. The dispute went on for almost three years. The disputed funds did not always remain in the trust account and the balance dipped below the disputed amount on some occasions. Mr. Vingelli did

not resolve the dispute in a timely manner as he received the funds in May 1997 but did not file an interpleader action with the court until September 2002. Mr. Vingelli also did not have all of the trust account records he was required to maintain. Mr. Vingelli was found to have violated ER 1.15(a), (b) and (c), Rule 42, Ariz.R.S.Ct., and Rules 43 and 44, Ariz.R.S.Ct., and was censured by consent and placed on two years of probation, including participation in the Law Office Member Assistance Program.

Similarly, in *Matter of Delozier*, SB 04–0034–D, (March 25, 2004), Mr. Delozier received a censure and probation for trust account violations. In that matter, Mr. Delozier failed to safeguard client funds, and commingled personal funds with client funds. He also failed to conduct monthly reconciliations, and failed to maintain complete records.

Other recent trust account cases also support the imposition of a censure and probation in this matter. See *Matter of Randall*, SB–02–0146–D (November 2002); *Matter of Hall*, SB 02–0122–D (September 2002); and *Matter of Inserra*, SB 02–0144 (October 2002).

This agreement provides for a sanction that meets the goals of the disciplinary system. A public censure with probation and costs will serve to protect the public, instill confidence in the public, deter other lawyers from similar misconduct, and maintain the integrity of the bar.

### RECOMMENDATION

The purpose of lawyer discipline is not to punish the lawyer, but to protect the public and deter future misconduct. *In re Fioramonti*, 176 Ariz. 182, 187, 859 P.2d 1315, 1320 (1993). It is also the objective of lawyer discipline to protect the public, the profession and the administration of justice. *In re Neville*, 147 Ariz. 106, 708 P.2d 1297 (1985). Yet another purpose is to instill public confidence in the bar's integrity. *Matter of Horwitz*, 180 Ariz. 20, 29, 881 P.2d 352, 361 (1994).

In imposing discipline, it is appropriate to consider the facts of the case, the American Bar Association's *Standards for Imposing Lawyer Sanctions ("Standards")* and the proportionality of discipline imposed in analogous cases. *Matter of Bowen*, 178 Ariz. 283, 286, 872 P.2d 1235, 1238 (1994).

Upon consideration of the facts, application of the *Standards*, including aggravating and mitigating factors, and a proportionally analysis, this Hearing Officer recommends acceptance of the Tender of Admissions and Agreement for Discipline by Consent and the Joint Memorandum in Support of Agreement for Discipline by Consent providing for the following:

1. Respondent shall receive a censure for violating Rule 42, Ariz. R.S.Ct., specifically ER 1.3 and ER 1.15, and Rules 43 and 44.

2. Respondent shall be placed on probation for a period of one year. The probation period will begin to run when all parties have signed the probation contract. The terms and conditions of probation are as follows:

a. Respondent shall contact the director of the State Bar's Law Office Management Assistance Program (LOMAP) within 30 days of the date of the final judgment and order. Respondent shall submit to a LOMAP audit of his office's trust account procedures and calendaring procedures. The Director of LOMAP shall develop a probation contract, and its terms shall be incorporated herein by reference.

b. Respondent shall refrain from engaging in any conduct that would violate the Rules of Professional Conduct or other rules of the Supreme Court of Arizona.

c. In the event that Respondent fails to comply with any of the foregoing conditions, and the State Bar receives information, bar counsel shall file with the Hearing Officer a Notice of Non–Compliance, pursuant to Rule 60(a)5, Ariz. R.S.Ct. The Hearing Officer shall conduct a hearing within thirty days after receipt of said notice, to determine whether the terms of probation have been violated and if an additional sanction should be imposed. In the event there is an allegation that any of these terms have been violat-

 

**ANSWER**

ed, the burden of proof shall be on the State Bar of Arizona to prove non-compliance by clear and convincing evidence.

3. Respondent shall pay the costs and expenses incurred in this disciplinary proceeding.

## COMPLAINANTS EXHIBIT C

## DISCIPLINARY COMMISSION REPORT

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on October 16, 2004, pursuant to Rule 58(e), Ariz. R.S.Ct., for consideration of the Hearing Officer's Report filed September 2, 2004, recommending acceptance of the Tender of Admissions and Agreement for Discipline by Consent (Agreement) and Joint Memorandum in Support of Agreement for Discipline by Consent (Joint Memorandum) providing for censure, one year of probation with the State Bar's Law Office Management Assistance Program (LOMAP), and costs of these disciplinary proceedings.

### *Decision*

The Commission's standard of review is set forth in Rule 58(b), which states that the Commission reviews questions of law *de novo*. In reviewing findings of fact made by a hearing officer, the Commission applies a clearly erroneous standard. Mixed findings of fact and law are also reviewed *de novo*. *State v. Blackmore*, 186 Ariz. 630, 925 P.2d 1347 (1996) citing *State v. Winegar*, 147 Ariz. 440, 711 P.2d 579 (1985).

Therefore, having found no findings of fact clearly erroneous, the eight [1] members of the Commission unanimously recommend adopting and incorporating by reference the Hearing Officer's findings of fact, conclusions of law, and recommendation for censure, one year of probation (LOMAP),[2] and costs.

### EXHIBIT B

Case No. 05 PDJ 057

Comes Respondent *in proper persona* and hereby Answers the Complaint of the above numbered matter as follows:

1. Respondent admits the allegations of paragraphs 1 and 2, 3, 4 and 5.

2. Answering paragraph 6, Respondent affirmatively alleges that he did not notify the State of Colorado Office of Attorney Regulation Counsel about the Arizona censure and probation because he was under the mistaken belief that he was no longer a member of the Colorado State Bar. Furthermore, he was notified by the Arizona State Bar that the State of Colorado Office of Attorney Regulation had been advised of the censure and probation immediately after the Arizona Bar imposed its discipline.

3. Respondent admits the allegations of paragraphs 7 and 8, 9 and 10.

4. Respondent denies the allegations of paragraph 11, and affirmatively alleges That he has never been suspended in Arizona or in any other jurisdictions; that the Arizona Supreme Court agreed that Respondent's actions were the result of negligence and that there was "no evidence indicating that he intended to misappropriate client's funds." *See* Respondent's exhibit "1" Joint Memorandum in Support of Agreement by Consent, Hearing Officers Report (Complainant's exhibit "B"); and exhibits "2" Disciplinary Commission Report and "3" Order Upon Decision.

5. Answering the allegations of paragraph 12, Respondent incorporates the Answers as stated above. Respondent denies the allegations of paragraph 12 and affirmatively alleges that he has practiced law exclusively in the State of Arizona; that the Arizona Bar and the Arizona Supreme Court best know Respondent's character and can best determine the proportionality of the infraction with the penalty imposed. As stated in the Hearing Officer's Report: There is an (a) Absence of a prior disciplinary record. There is an absence of (b) dishonest or selfish motive—Respondent's conduct was negli-

---

1. Commissioner Atwood recused.

2. Probation is effective upon signing of the probation contract.

gent. There is no evidence indicating that he intended to misappropriate his client's funds. (c) There was a timely and good faith effort to make restitution or to rectify consequences of misconduct, and (d) there was a full and free disclosure to disciplinary board of cooperative attitude toward proceedings. Under these circumstance, Respondent affirmatively alleges that, as found by the Arizona State Bar, public censure and probation with conditions is warranted in this proceedings.

6. Respondent admits the allegation of paragraph 13, that he was notified of the sanction sought by the Complainant,

7. Respondent is without sufficient information to either admit or deny the allegations of paragraph 14.

### Respondent's Exhibit "1"

## JOINT MEMORANDUM IN SUPPORT OF AGREEMENT BY CONSENT

### (Assigned to Hearing Officer 6M, Bruce G. Macdonald)

The State Bar of Arizona and Respondent Jesus R. Romo Vejar, who is represented by Thomas A. Zlaket, hereby submit their Joint Memorandum in Support of the Agreement for Discipline by Consent. Respondent failed to adequately safeguard client funds on deposit in his trust account and failed to maintain his trust account in accordance with the Rules of Professional Conduct. As set forth in the Tender of Admissions, the misconduct arose from Respondent's failure to timely remit lien monies to a third-party after withholding them from a client's settlement. Respondent will receive a censure for his conduct and be placed on one-year probation. This agreement serves the purposes of discipline in that it protects the public and will deter other lawyers from engaging in similar misconduct. Restitution is not applicable in this matter. Respondent shall pay all costs and expenses incurred in these discipline matters. The Tender of Admission and Agreement for Discipline by Consent is filed contemporaneously herewith.

In determining the appropriate sanction, consideration was given to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (*"Standards"*) and Arizona case law.

### ABA Standards

The *Standards* are designed to promote consistency in the imposition of sanctions by identifying relevant factors that courts should consider and then applying these factors to situations where lawyers have engaged in various types of misconduct. *Standards* 1.3, Commentary. The *Standards* provide guidance with respect to an appropriate sanction in this matter. The court and commission consider the *Standards* a suitable guideline. *In re Rivkind,* 164 Ariz. 154, 157, 791 P.2d 1037, 1040 (1990); *In re Kaplan,* 179 Ariz. 175, 177, 877 P.2d 274, 276 (1994). In determining an appropriate sanction, both the court and the commission consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct and the existence of aggravating and mitigating factors. *Matter of Tarletz,* 163 Ariz. 548, 789 P.2d 1049 (1990); ABA *Standard* 3.0.

Given the conduct in this matter, the most applicable Standard is 4.1 regarding failure to preserve the client's property. Specifically, Standard 4.13 provides: "[Censure] is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client."

In this matter, Respondent has asserted, and the State Bar has agreed to accept, that his misconduct with his trust account was negligent. Respondent acknowledges that Mr. Dominguez suffered at least potential harm by the negligent misappropriation of the lien monies in that he could have been held liable for the lien payment during the time period in question. However, as set forth in the Tender, the lien has now been paid in full.

In deciding what sanction to impose the following aggravating and mitigating circumstances should be considered:

**Aggravating Factors:**

*Standard 9.22(i) substantial experience in the practice of law:* Respondent has been a lawyer in Arizona for over 17 years.

**Mitigating Factors:**

*Standard 9.32(a) absence of a prior disciplinary record:* Respondent does not have any prior discipline.

*Standard 9.32(b) absence of a dishonest or selfish motive:* Respondent's conduct was negligent. There is no evidence indicating that he intended to misappropriate his client's funds.

*Standard 9.32(d) timely good faith effort to make restitution or to rectify consequences of misconduct:* Upon receiving the charge from the State Bar of Arizona, Respondent promptly paid the full amount due to the third party lien holder. Respondent contends that the bar charge was the first he realized that the lien had not been timely paid.

*Standard 9.32(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings:* Respondent was forthcoming and cooperative throughout the investigative stage of these proceedings and continued to be cooperative after the filing of a formal complaint. In addition, Respondent timely provided all trust account records requested during the investigation.

In evaluating the aggravating and mitigating factors, the parties agree that the presumptive sanction in this matter is a censure.

## PROPORTIONALITY ANALYSIS

To have an effective system of professional sanctions, there must be internal consistency, and it is appropriate to examine sanctions imposed in cases that are factually similar. *In re Shannon,* 179 Ariz. 52, 71, 876 P.2d 548, 567 (1994) (quoting *In re Wines,* 135 Ariz. 203, 207, [660 P.2d 454] (1983)). However, the discipline in each case must be tailored to the individual case, as neither perfection nor absolute uniformity can be achieved. *Matter of Riley,* 142 Ariz. 604, 615, 691 P.2d 695 (1984).

In terms of proportionality, the following cases are instructive: In *Matter of Vingelli,* SB–03–0161–D (January 13, 2004), Mr. Vingelli represented a client, who at the time was a minor, in a personal injury matter. After the matter settled, Mr. Vingelli agreed to contest the claim by the parents' insurer for reimbursement. Mr. Vingelli notified the insurer that the client was contesting the claim and that the disputed money would be held in his client trust account until the matter was resolved. The dispute went on for almost three years. The disputed funds did not always remain in the trust account and the balance dipped below the disputed amount on some occasions. Mr. Vingelli did not resolve the dispute in a timely manner as he received the funds in May 1997 but did not file an interpleader action with the court until September 2002. Mr. Vingelli also did not have all of the trust account records he was required to maintain. Mr. Vingelli was found to have violated ER 1.15(a), (b) and (c), Rule 42, Ariz.R.S.Ct., and Rules 43 and 44, Ariz.R.S.Ct., and was censured by consent and placed on two years of probation, including participation in the Law Office Member Assistance Program.

Similarly, in *Matter of Delozier,* SB 04–0034–D, (March 25, 2004), Mr. Delozier received a censure and probation for trust account violations. In that matter, Mr. Delozier failed to safeguard client funds, and commingled personal funds with client funds. He also failed to conduct monthly reconciliations, and failed to maintain complete records.

Other recent trust account cases also support the imposition of a censure and probation in this matter. See *Matter of Randall,* SB–02–0146–D (November 2002); *Matter of Hall,* SB 02–0122–D (September 2002); and *Matter of Inserra,* SB 02–0144 (October 2002).

This agreement provides for a sanction that meets the goals of the disciplinary system. A public censure with probation and costs will serve to protect the public, instill confidence in the public, deter other lawyers from similar misconduct, and maintain the integrity of the bar.

## CONCLUSION

The objective of lawyer discipline is not to punish the lawyer, but to protect the public, the profession, and the administration of justice. *In re Neville,* 147 Ariz. 106, 708 P.2d 1297 (1985). Recognizing it is the prerogative of the Hearing Officer, the Disciplinary Commission and the Supreme Court to determine the appropriate sanction, the State Bar and Respondent assert the objectives of discipline will be met by the imposition of the proposed sanction of a censure, probation and the costs and expenses of these proceedings.

### Exhibit "2"

## DISCIPLINARY COMMISSION REPORT

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on October 16, 2004, pursuant to Rule 58(e), Ariz. R.S.Ct., for consideration of the Hearing Officer's Report filed September 2, 2004, recommending acceptance of the Tender of Admissions and Agreement for Discipline by Consent (Agreement) and Joint Memorandum in Support of Agreement for Discipline by Consent (Joint Memorandum) providing for censure, one year of probation with the State Bar's Law Office Management Assistance Program (LOMAP), and costs of these disciplinary proceedings.

### Decision

The Commission's standard of review is set forth in Rule 58(b), which states that the Commission reviews questions of law *de novo.* In reviewing findings of fact made by a hearing officer, the Commission applies a clearly erroneous standard. Mixed findings of fact and law are also reviewed *de novo. State v. Blackmore,* 186 Ariz. 630, 925 P.2d 1347 (1996) citing *State v. Winegar,* 147 Ariz. 440, 711 P.2d 579 (1985).

Therefore, having found no findings of fact clearly erroneous, the eight [1] members of the Commission unanimously recommend adopting and incorporating by reference the Hear-

ing Officer's findings of fact, conclusions of law, and recommendation for censure, one year of probation (LOMAP),[2] and costs.

### Exhibit "3"

## ORDER UPON DECISION

The Disciplinary Commission having this date made its Report in the captioned matter, and pursuant to Rule 58(e), Ariz. R.S.Ct.,

IT IS ORDERED:

1. The Commission Report in the captioned matter is hereby adopted by the Commission, and it shall be filed by the Disciplinary Clerk.

2. Respondent and the State Bar may file with the Disciplinary Clerk a Notice of Intent to File a Petition for Review by the Supreme Court within ten (10) days of service of the Commission's report. The petition for review is due twenty (20) days thereafter, and a Cross–Petition for Review may be filed within fifteen (15) days after service of a petition for review, pursuant to Rule 59(a). The form and contents of the petitions shall comply with Rule 59(d).

3. If no Petition for Review is timely filed, the Disciplinary Clerk, under the provisions of Rule 59(i), shall prepare and file a certificate attesting to those facts and submit this matter to the Clerk of the Supreme Court for entry of Judgment of Censure and Probation, pursuant to Rules 60(3) and (5), Ariz. R.S.Ct.

4. If a Petition for Review is filed, upon the expiration of the time for filing a Cross–Petition for Review, the Disciplinary Clerk shall transmit a partial record to the Clerk of the Supreme Court pursuant to Rule 59(e).

5. In the event a Petition for Review is granted, or if ordered by the Court, *sua sponte,* the Disciplinary Clerk shall transmit the entire record on appeal to the Clerk of

---

1. Commissioner Atwood recused.

2. Probation is effective upon signing of the probation contract.

**1232** 

the Supreme Court pursuant to Rule 59(h) and (i).